UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
FAIR HOUSING JUSTICE CENTER, INC.,

                            Plaintiff,

        -against-

BRUCKNER TOWER LLC, CARNEGIE
MANAGEMENT INC., KARL FISCHER
ARCHITECTURE PLLC AND FISCHER +
MAKOOI ARCHITECTS PLLC

                           Defendants.
--------------------------------------------------------------x

**Docket No. 1:19-cv-08622 (DLC)(JW)**

**PROPOSED REQUESTS TO CHARGE**

# PROPOSED REQUESTS TO CHARGE

### EXPLANATORY MEMORANDUM FOR THE COURT REGARDING JURY INSTRUCTIONS

THE PARTIES HAVE EXCHANGED COPIES OF THE JURY INSTRUCTIONS. WHILE MOST OF THE LANGUAGE IN THESE INSTRUCTIONS HAS BEEN WORKED OUT BETWEEN THE PARTIES, THE PARTIES STILL HAVE NOT MANAGED TO RESOLVE ALL ISSUES.  ACCORDINGLY, JURY INSTRUCTIONS THAT HAVE NOT BEEN RESOLVED WILL CONTAIN A BOLDED AND UNDERLINED HEADER IDENTIFYING WHICH PARTY IS PROPOSING THE INSTRUCTION AND, AFTER THE PROPOSED INSTRUCTION, WILL CONTAIN THE OBJECTING PARTY'S REASONS FOR THE OBJECTION.

Pursuant to the Individual Practices of Denise L. Cote, the parties respectfully submit the following proposed requests to charge. Plaintiff and defendants reserve the right to modify, amend, or supplement the following proposed jury instructions to address any claims or defenses raised by plaintiff or defendants before or during trial, any rulings that the Court may issue before or during trial, or the evidence actually introduced at trial.

———————————————

**Proposed Jury Instruction No. 1.:  Nature of Plaintiff's Claims**

In this case, the plaintiff, Fair Housing Justice Center, Inc., claims that defendants have designed and constructed multi-family residential dwelling units and common areas at 25 Bruckner Boulevard in Bronx County, New York ("25 Bruckner Boulevard") that are not accessible to wheelchair users in violation of the laws against disability discrimination. Defendants deny violating the law and make affirmative defenses.  Later in the case, I will give you more specific instructions regarding the elements of each of the claims and defenses.

**Proposed Jury Instruction No. 2.:  Order of Trial**

The first step in the trial will be the opening statements. In his opening statement, plaintiff's counsel will tell you about the evidence that he intends to put before you, so that you will have a preview of what his case is going to be. It is important that you remember that the opening statement is not evidence. Its purpose is only to help you understand what the evidence will be and what plaintiff will try to prove.

After opening statements, the plaintiff will present evidence in support of plaintiff's claims and the defendants' lawyers may cross examine the witness. At the conclusion of the plaintiff's case, the defendants may introduce evidence and the plaintiff's lawyer may cross examine the witness. The defendants are not required to introduce any evidence or to call any witness. If the defendants introduce evidence, the plaintiff may then present rebuttal evidence. After the evidence is presented, the parties' lawyers make closing arguments explaining what they believe the evidence has shown. What is said in the closing arguments is not evidence. Finally, I will instruct you on the law that you are to apply in reaching your verdict. You will then decide the case.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 101:02-03 (6th ed.)

**Proposed Jury Instruction No. 3.:  Province of Judge and Jury**

Now that I have described the trial itself, let me explain the jobs that you and I are to

perform during the trial.  After all the evidence has been heard and arguments and instructions

are finished, you will meet to make your decision. You will determine the facts from all the

testimony and other evidence that is presented. You are the sole and exclusive judge of the facts.

By your verdict, you will decide disputed issues of fact.

I will decide all questions of law that arise during the trial. Before you begin your

deliberation at the close of the case, I will instruct you in more detail on the law that you must

follow and apply. In other words, as Judge, I will decide which rules of law apply to this case. I

will make those decisions in response to questions raised by the parties as we go along and also

in the final instructions given to you after the evidence and arguments are completed. I must

stress that you are required to accept the rules of law that I give you, whether or not you agree

with them.

As the jury, you will decide whether plaintiff has proved, by a preponderance of the

evidence, that defendants violated the law. You must base that decision only on the evidence in

the case and my instructions about the law.

I am permitted to comment on the evidence in the case during the trial or while

instructing the jury. Such comments are only expressions of my opinion as to the facts. You may

disregard these comments entirely, because you are to determine for yourself the weight of the

evidence and the credibility of each of the witnesses.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 101:10 (6th ed.); *see also Care Travel Co. v. Pan Am. World Airways, Inc.*, 944 F.2d 983, 991 (2d Cir. 1991) ("[A] federal district judge who conducts a jury trial has the duty to see that the facts are clearly presented . . .. In order to do so, the judge  is permitted to summarize the evidence for the jury and, if he chooses, to comment on it.  In addition, a judge may also interpose relevant questions to witnesses to clarify both legal and factual issues and thus minimize possible confusion in the jurors' minds.").

**Proposed Jury Instruction No. 4.:  Jury Conduct**

Members of the jury, to ensure fairness to the parties in this action, you must obey the following rules:  Do not talk to each other about this case or about anyone involved with this case until the end of the trial when you go to the jury room to decide on your verdict. Do not talk with anyone else about this case or about anyone involved with this case until the trial has ended and you have been discharged as jurors. "Anyone else" includes members of your family and your friends. You may tell people you are a juror, but do not tell them anything else about the case.

Outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it until after you have reached your verdict. If someone should try to talk to you about the case before then, please report it to me immediately.

During the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case -- you should not even pass the time of day with any of them. It is important not only that you do justice in this case, but that you also give the appearance of doing justice.

Do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it.  Do not do any research, such as checking dictionaries or searching the Internet, or make any investigation about the case, the parties, the witnesses, or the attorneys on your own.

Do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you, and the other jurors have discussed all the evidence.  If you need to tell me something, simply give a signed note to the [marshal] [clerk] to give to me.  To reiterate, during the course of the trial you will

receive all the evidence you may properly consider to decide the case. You, as jurors, must decide this case based solely on the evidence presented here within the four walls of this courtroom. This means that during the trial you must not conduct any independent research about this case, the matters in the case, and the individuals or corporations involved in the case. In other words, you should not consult dictionaries or reference materials, search the Internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case. Please do not try to find out information from any source outside the confines of this courtroom.

Until you retire to deliberate, you may not discuss this case with anyone, even your fellow jurors. After you retire to deliberate, you may begin discussing the case with your fellow jurors, but you cannot discuss the case with anyone else until you have returned a verdict, and the case is at an end.

I expect you will inform me if you become aware of another juror's violation of these instructions.  The reason for these rules, as I am certain you will understand, is that your decision in this case must be made solely on the evidence presented at the trial.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 101:11-13 (6th ed.) (adapted).

**Proposed Jury Instruction No. 5.:  Role of The Jury**

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or function as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. Nothing I may have said during the trial or what I may say in these instructions is evidence pertaining to any fact. In this connection, you should bear in mind that a question put to a witness is never evidence, it is only the answer which is evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record. Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the either of the parties has proven its case.

I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses. These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses. You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

**SOURCE:**  3 Fed. Jury Prac. & Instr. §§ 103:01, 103:10 (6th ed.); 71 Modern Fed. Jury Instr.-Civil 71.01, 71-1, 71-2.

**Proposed Jury Instruction No. 6. :  Note Taking**

During this trial, I will permit you to take notes. You are not required to take notes. If you do not take notes, you should not be influenced by another juror's notes, but should rely upon your own recollection of the evidence.

If you decide to take notes, a word of caution is in order. You must not allow your note-taking to distract you from the proceedings.  Frequently, there is a tendency to attach too much importance to what a person writes down. Some testimony that is considered unimportant at the time presented and not written down may take on greater importance later in the trial in light of all the evidence presented, the final arguments, and my instructions on the law.

Accordingly, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Your memory should be your greatest asset when it comes time to deciding this case.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 101:15 (6th ed.); 4 Modern Fed. Jury Instr.-Civil 71.02, 71-16; *see also United States v. Bertolotti*, 529 F.2d 149, 159 (2d Cir. 1975) ("It has been long established in this Circuit that it is within the trial court's discretion to allow the jury to take notes and use them in the course of their deliberations.").

**Proposed Jury Instruction No. 7.:  Evidence in This Case**

The evidence in the case consists of the following:  the sworn testimony of the witnesses, no matter who called the witness; all exhibits received in evidence, regardless of who may have produced the exhibits; and all facts that may have been judicially noticed, admitted by the parties or stipulated to between the parties, and that you must take as true for purposes of this case.

Where I have declared that I have taken judicial notice of some fact or event, you must accept that fact as true. A stipulation is an agreement between both sides that certain facts are true. When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved. An admission is a concession by a particular party that a certain fact is true. When a party concedes or admits the existence of a fact, you must, unless otherwise instructed, accept the admission as evidence, and regard that fact as proved.

Statements and arguments by the lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statement, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence. Furthermore, if a lawyer asks a witness a question containing an assertion of fact, you may not consider the assertion as evidence of that fact.

Any evidence as to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.

The law permits me to comment on the evidence in the case. These comments are only an expression of my opinion as to the facts. You may disregard my comments entirely, since you, as jurors are the sole judges of the facts and are not bound by my comments or opinions.

Some evidence is admitted for a limited purpose only. When I instruct you that an item of

evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other purpose.

You are to consider only the evidence in the case. But in your consideration of the evidence, you are not limited to the statements of the witness. In other words, you are not limited solely to what you see and hear as the witnesses testified. You may draw from the facts that you find have been proved such reasonable inferences or conclusions as you feel are justified in light of your experience.

At the end of the trial, you will have to make your decision based on what you recall of the evidence. You will not have a written transcript to consult, and it is difficult and time consuming for the reporter to read back lengthy testimony. I urge you to pay close attention to the testimony as it is given.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 101:40 (6th ed.) (adapted).

**Proposed Jury Instruction No. 8.:  What Is Not Evidence**

In deciding the facts of this case, you are not to consider the following as evidence: statements and arguments of the lawyers; questions and objections of the lawyers; testimony that I instruct you to disregard; and anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 101:44 (6th ed.).

**Proposed Jury Instruction No. 9.:  Burden of Proof**

This is a civil case. Plaintiff has the burden to prove every essential element of each of the plaintiff's claims by a preponderance of the evidence.

When a party has the burden to prove any matter by a preponderance of the evidence, it means that you must be persuaded by the testimony and exhibits that the matter sought to be proved is more probably true than not true. In determining whether any fact in issue has been proved by a preponderance of the evidence, unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds a belief that what is sought to be proved is more likely true than not true. If plaintiff fails to meet this burden, your verdict must be for defendants.

If plaintiff fails to establish any essential element of the claim by a preponderance of the evidence, you should find for defendants as to that claim. I will explain these elements to you in detail. Please note that the preponderance of the evidence standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

Additionally, some of you may have heard of proof beyond a reasonable doubt, which is a proper standard in a criminal trial. This is a civil trial, not a criminal trial. Because this is a civil case, the reasonable doubt standard does not apply to this case, and you should put it out of your mind.

Please keep in mind that, when assessing whether the plaintiff  has met its burden of proof on any claim, the question is not which party called the greater number of witnesses, or

how much time one party or another spent on that claim during the trial. Your focus must always

be on the quality of the evidence: its persuasiveness in convincing you of its truth.

**SOURCE:**  3 Fed. Jury Prac. & Instr. §§ 101:41, 104:01 (6th ed.) (adapted); Modern Fed. Jury Instr.-Civil 73.01, 73-1, 73-2; *see also* Model Civ. Jury Instr. 9th Cir. 1.3 (2007); Model Civ. Jury Instr. 3rd Cir. 1.10 (2011).

**Proposed Jury Instruction No. 10.:  Affirmative Defenses**

   Defendants have asserted affirmative defenses as to certain elements of the claim asserted by plaintiff. I will go into the specifics of such affirmative defenses after you have had a chance to hear the evidence, but it is important that you understand generally what an affirmative defense is. Defendants have the burden of proof of establishing any affirmative defense they may assert by a preponderance of the evidence.

**SOURCE:**  3B Fed. Jury Prac. & Instr. § 162:310 (6th ed.).

**Proposed Jury Instruction No. 11.:  Credibility of Witnesses**

In deciding the facts, you will have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, part of it, or none of it.  In considering the testimony of any witness, you may take into account many factors, including the witness' opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness' memory; the witness' appearance and manner while testifying; the witness' interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness' testimony; and the reasonableness of the witness' testimony in light of all the evidence. The weight of the evidence does not necessarily depend upon the number of witnesses who testify.

In this process, members of the jury, you are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  It is your job to decide how believable each witness was in his or her testimony.

You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief.  Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying.

Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimonies of different witnesses may or may not cause you to discredit such testimony. Two or more people seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

To repeat, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

**SOURCE:** 3 Fed. Jury Prac. & Instr. §§ 101:43; 105:01 (6th ed.); 4 Modern Fed. Jury Instr.-Civil 76.01, 76-1 -- 76-4; *see also Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir. 1952) ("[Jury] should [] take into consideration the whole nexus of sense impressions which they get from a witness.").

**Proposed Jury Instruction No. 12.:  Expert Witnesses**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions; ordinarily, witnesses are permitted to testify only as to facts. There is an exception to this rule, however, for "expert witnesses." An expert witness is a person who, by education and experience, has become an expert in some art, science, profession, or calling. Expert witnesses are permitted to state their opinions as to matters in which they profess to be expert and may also state their reasons for their opinions.

During this trial, I will permit certain expert witnesses to express their opinions about certain matters that will be at issue in this case. Such expert witnesses are permitted to testify to an opinion only on those matters about which they have special knowledge, skill, experience and training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

You should consider each expert opinion received in evidence in this case and give it such weight as you think it deserves. If you should decide the opinion of an expert witness is not based upon sufficient education and/or experience, or if you should conclude the reasons given in support of the opinion are not sound, or if you feel the expert's opinion is outweighed by other evidence, you may disregard the opinion entirely.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 104:40 (6th ed.); 4 Modern Fed. Jury Instr.-Civil 76.01, 76-9, 76-10; *see also United States v. Simon*, 425 F.2d 796, 806 (2d Cir. 1969) (upholding jury charge stating that "[t]he weight and credibility to be extended by you . . . must depend, among other things, on how authoritative you find the precedents and the teachings relied upon by the parties to be, the extent to which they contemplate, deal with, and apply to the type of circumstances found by you to have existed here, and the weight you give to expert opinion evidence offered by the parties.  Those may depend on the credibility extended by you to expert witnesses, the definiteness with which they testified, the reasons given for their opinions, and all the other facts affecting credibility").

**Proposed Jury Instruction No. 13.: Duty of Impartiality**

As to the facts, members of the jury, you are the exclusive judges. You are to perform the duty of finding the facts without bias or prejudice to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion.

Your verdict must be based solely upon the evidence developed at this trial, or the lack of evidence. It would be improper for you to consider any personal feelings you may have about one of the parties. It would be equally improper for you to allow any feelings you might have about the nature of the claim against the defendant to influence you in any way. The parties in this case are entitled to a trial free from prejudice. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

You should consider and decide this case as a dispute between people of equal standing in the community, of equal worth, and holding the same or similar stations in life. The fact that the parties are corporations and limited liability companies does not mean they are entitled to any lesser consideration by you. All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give any other individual party.

All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences. In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy, and without fear, solely upon the evidence in the case and the applicable law. I know that you will do this and reach a just and true verdict.

**SOURCE:** 4 Modern Fed. Jury Instr.-Civil 71.01, 71-4, 72.01, 72-1; 3 Fed. Jury Prac. & Instr. §§ 103:01, 103:10, 103:12 (6th ed.).

**Proposed Jury Instruction No. 14.:  Juror's Electronic Communications**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as cell phones, iPhones, Blackberries, the Internet, e-mail, text messaging, Twitter, any blog or website, including Facebook, LinkedIn, or YouTube, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. You may not use any similar technology of social media, even if I have not specifically mentioned it here.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations. I expect you will inform me immediately if you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the Internet or available through social media might be wrong, incomplete, or inaccurate. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 103:04 (6th ed.).

**Proposed Jury Instruction No. 15.:  Organizational Parties**

You should consider and decide this case as a dispute between people of equal standing in the community, of equal worth, and holding the same or similar stations in life. A non-profit corporation or a limited liability company is entitled to the same fair trial as a private individual. All persons, including nonprofit corporations and limited liability companies stand equal before the law, and are to be treated as equals.

**SOURCE:** Federal Jury Practice § 103.12.

## PROPOSED CONCLUDING INSTRUCTIONS

**Proposed Jury Instruction No. 16.:  Duty of The Court**

Now that you have heard the evidence and the argument, it is my duty to instruct you about the applicable law. It is your duty to follow the law as I will state it. You must apply the law to the facts as you find them from the evidence in the case. Do not single out one instruction as stating the law but consider the instructions as a whole. Do not be concerned about the wisdom of any rule of law stated by me. You must follow and apply the law as explained in these instructions.

The lawyers have properly referred to some of the governing rules of law in their arguments. If there is any difference between the law stated by the lawyers and these instructions, you must follow my instructions.

Nothing I say in these instructions indicates I have any opinion about the facts, and you should not interpret these instructions to suggest that I have an opinion about the facts of this case. You, not I, have the duty to determine the facts.

Before I begin instructing you as to the law, I would like to note that it has been obvious to me and counsel that until now you have faithfully discharged your duty to listen carefully and observe each witness who testified. Your interest never flagged, and you have followed the testimony with close attention. I ask you to give me that same careful attention as I instruct you on the law. Please pay close attention, and I will be as clear as possible.

**SOURCE:**  3 Fed. Jury Prac. & Instr. §§ 103:01, 103:10 (6th ed.); 71 Modern Fed. Jury Instr.-Civil 71.01, 71-1, 71-2; *Franks v. United States Lines Co.*, 324 F.2d 126, 127 (2d Cir. 1963) ("A [jury] charge must be interpreted as a whole . . . not in individual parts.").

**Proposed Jury Instruction No. 17.:  Direct and Circumstantial Evidence**

As I mentioned to you before the start of the trial, there are two types of evidence presented during a trial -- direct evidence and circumstantial evidence. "Direct evidence" is direct proof of a fact, such as testimony by a witness about what the witness said or heard or did. In other words, direct evidence is when a witness testifies about something he knows by virtue of his own senses -- something he has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit where the fact to be proved is its present existence or condition.

"Circumstantial evidence" is proof of one or more facts from which you could find another fact. In other words, it is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact. Circumstantial evidence tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse. Assume that when you came into the courthouse this morning the sun was shining, and it was a nice day. Assume that the courtroom blinds were drawn, and you could not look outside. As you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom, and you cannot see whether or not it is raining. So, you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact. Please note, however, it is not a matter of speculation or guess; it is a matter of logical inference.

The law generally makes no distinction between the weight or value to be given to either

direct or circumstantial evidence, and you should consider both kinds of evidence. You are to decide how much weight to give any evidence you have been presented at trial. A greater degree of certainty is not required of circumstantial evidence. In other words, circumstantial evidence is of no less value than direct evidence. You are required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.


**SOURCE:**  3 Fed. Jury Prac. & Instr. §§ 101:42; 104:05 (6th ed.); 4 Modern Fed. Jury Instr.-Civil 74.01 (2014); *see also Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960) ("Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.").

**Proposed Jury Instruction No. 18.:  Inferences**

You are to consider only the evidence in the case. However, you are not limited to the statements of the witnesses. You may draw from the facts you find have been proved such reasonable inferences as seem justified in light of your experience. "Inferences" are deductions or conclusions that reason, and common sense lead you to draw from facts established by the evidence in the case.

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact. An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiff asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw -- but not required to draw -- from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense. So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 104:20 (6th ed.); 4 Modern Fed. Jury Instr.-Civil 75.01.

75-1; *see also Schulz v. Pennsylvania R. Co.*, 350 U.S. 523, 526 (1956) ("The very essence of [the jury's] function is to select from among conflicting inferences and conclusions that which it considers most reasonable.  Fact finding does not require mathematical certainty.  Jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or proof of circumstances from which inferences can fairly be drawn."); *Wilkins v. American Export Isbrandtsen Lines, Inc.*, 446 F.2d 480, 484 (2d Cir. 1971) ("Of course, in some situations proof of one fact provides a basis for inferring another.").

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 19. :  TESTERS

In the context of this case, a "tester" is a person who without an intent to rent an apartment, poses as a renter for the purpose of collecting information about rental practices. The Supreme Court of the United States has recognized that such testing is a necessary and appropriate means of enforcing this country's fair housing laws. The evidence provided by testers is frequently valuable, if not indispensable, in cases such as this. The activities of testers are a reasonable means by which citizens may ascertain compliance with fair housing laws. Evidence of testing activities, if otherwise found to be credible, is an appropriate method of demonstrating the policies and practices of the defendants in a case of this nature. The fact that a tester may not have given the defendants accurate information and may have approached one of the defendants without any intention of renting an apartment, does not negate a tester's simple fact of injury under the applicable fair housing law.

**SOURCE:** *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982); *Cabrera v. Jakabovitz* 24 F.3d 372, 378 (2d Cir. 1994) ("Testers are individuals who, without the intent to rent an apartment, pose as renters for the purpose of collecting evidence of unlawful steering away of prospective minority purchasers by real estate agents.") (internal citations omitted); *Richardson v. Howard*, 712 F. 2d 319, 320 (7th Cir. 1983).

DEFENDANTS' OBJECTIONS:

The suggestion that the use of testers has the imprimatur of the Supreme Court is misleading given that the Supreme Court is presently reconsidering the issue in *Acheson Hotels v. Laufer* 143 S.Ct. 1053 (2023). Moreover, plaintiff's expert report is based its expert's inspection, not tester observations.  This proposed instruction is unnecessary and prejudicial to defendants.

Further object because *Havens Realty Corp. v. Colema*n, 455 U.S. 363, 379 n.21, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982) stands for the proposition that Section 804(d)  "establishes an enforceable right to truthful information concerning the availability of housing … A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against ….That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d)" (id.).

804(d) makes it unlawful "(d) To represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available."

Conversely, this Action, alleges violations of 804(f)(2) (making it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of-- (A) that person; or (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that person"); and 804(f)(2)("discrimination includes … in connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after the date of enactment of the Fair Housing Amendments Act of 1988, a failure to design and construct those dwelling in such a manner that-- (i) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and (iii) all premises within such dwellings contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space").  There are no allegations that Defendants misrepresented the availability of housing, thereby justifying misstatements by testers as to the intention of renting a home.

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 20.:  *RESPONDEAT SUPERIOR***

Defendants are corporations. A corporation may act only through natural persons such as its employees and, in general, an employee of a corporation may bind the corporation by the employee's actions and statements while acting within the scope of the employee's authority or within the scope of the employee's duties as an employee of the corporation.

Under the legal doctrine of *Respondeat superior*, a company is liable for the acts and omissions committed by its employees or agents acting within the scope of their authority, even where the company itself has committed no primary violation.

**SOURCE:**  O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions* Fed., 3C Jury Prac. & Instr. § 171.27 (Respondeat Superior) (5th ed. 2001); *Crigger v. Fahnestock & Co.*, No. 01 Civ. 07819, 2003 WL 22170607, at *12-14  (S.D.N.Y. Sept. 18, 2003) (as to *Respondeat superior*).

DEFENDANTS' OBJECTIONS:

This is not a disputed issue.  This instruction is unnecessary and has the potential to confuse jurors.

**<u>PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 21.:  ORGANIZATIONAL</u>**
**<u>PLAINTIFF</u>**

      One of the plaintiffs in this case is a nonprofit corporation, the Fair Housing Justice

Center. Such an organization is permitted to bring suit under the Fair Housing Act, the Human

Rights Law of the City of New York, and the Human Rights Law of the State of New York on its

own behalf for injury to its ability to carry out its mission to ensure equal access to housing and

to eliminate unlawful housing discrimination, and for diversion of its resources away from its

other programs and activities in order to investigate the defendant's unlawful conduct.

**SOURCE:** *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982); *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 904-05 (2d Cir. 1993); *Fair Housing Justice Center v. Silver Beach Gardens Corp.*, 2010 WL 3341907 (S.D.N.Y., August 13, 2010) (holding that the Fair Housing Justice Center has organizational standing and is entitled to seek compensatory damages for resources devoted to investigating Defendants' housing practices).

DEFENDANTS' OBJECTIONS:

This is not a disputed issue.  This instruction is unnecessary and has the potential to confuse jurors.

**Proposed Jury Instruction No. 22.: Multiple Defendants**

Although there is more than one defendant in this action, it does not follow from that fact alone that if one defendant is liable to the plaintiff, all defendants are liable. Each defendant is entitled to a fair consideration of the evidence. No defendant is to be prejudiced should you find against another.

3 Fed. Jury Prac. & Instr. § 103:14 (6th ed.), 3 Fed. Jury Prac. & Instr. § 103:14 (6th ed.)

**<u>CLAIMS & DAMAGES</u>**

Now that I have given you general instructions on the law, I will turn to the specific instructions concerning the allegations made in this case.

**Proposed Jury Instruction No. 23. :  Nature of The Claim**

Plaintiff Fair Housing Justice Center, Inc. claims that the defendants violated the law by failing to design and construct a residential apartment complex to be accessible to persons with disabilities. The Fair Housing Act requires that all apartment complexes that are designed or constructed for first occupancy after March 13, 1991, be made accessible to persons with disabilities. Specifically, the FHA requires that multifamily dwellings be designed and built such that, (1) "the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;" (2) "the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs," and (3) the dwellings contain certain "features of adaptive design," including "an accessible route into and through the dwelling," switches and other controls in "accessible locations," "reinforcements in bathroom walls to allow later installation of grab bars," and "usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space."

SOURCE:  42 U.S.C. § 3604(f)(3)(C)(i)-(iii).

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 24.:  PURPOSE OF DISABILITY DISCRIMINATION LAWS**

Before I instruct you on the elements of the claims alleged, it will be useful for you to understand the purposes of these laws.

The purpose of the federal civil rights statute, the Fair Housing Act, which is also known as the FHA, is to eliminate discrimination against and equalize housing opportunities for disabled individuals.

The purpose of the New York State Human Rights Law is to protect the public welfare, health and peace of the State of New York, to assure that every individual within the state of New York is afforded an equal opportunity to enjoy a full and productive life, and to eliminate and prevent discrimination.

The purpose of the New York City Human Rights Law is to eliminate and prevent discrimination and to ensure that every individual within the City of New York is afforded an equal opportunity to enjoy a full and productive life. The New York City Human Rights Law is intended to provide the greatest possible protection for civil rights.

**SOURCE:**  *Community Housing Trust v. Department of Consumer and Regulatory Affairs*, 257 F.Supp.2d 208 (D.D.C. 2003); N.Y. Exec. Law § 290(3) (reciting purpose of statute); N.Y. Admin. Code, § 8-101 (stating purpose of statute); *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 74, 872 N.Y.S.2d 27 (1st Dept. 2009).

DEFENDANTS' OBJECTIONS:

The purpose of the laws is not an issue in this action.  This instruction is unnecessary and prejudicial.

**Proposed Jury Instruction No. 25.:  FAIR HOUSING ACT, 42 U.S.C. § 3604**

In this case the Plaintiff make a claim under the Federal Civil Rights statute that prohibits discrimination and makes it unlawful to discriminate against any person in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of their disability or on account of their association with a person with a disability.

Discrimination under this statute includes the failure to design and construct multi-family dwellings so such dwellings are accessible and usable for persons with disabilities.  Plaintiff alleges that Defendants have discriminated by failing to design and construct 25 Bruckner Boulevard in a manner that was accessible and useable for persons with disabilities and that the Defendants did not comply with the requirements of the accessibility portion of the Fair Housing Act.

**SOURCE:** 42 U.S.C. § 3604

**Proposed Jury Instruction No. 26. :  Elements of a Fair Housing Act Design and Construction Claim**

Under the Fair Housing Act, "Discrimination" on the basis of handicap, is defined as the failure to design and construct dwellings in such a manner that they would be accessible and usable by persons with disabilities.

Specifically, discrimination at issue in this matter includes the failure to design and construct dwellings that consist of the following:

(1) The public and common use areas are readily accessible to and usable by handicapped persons;

(2) All the doors designed to allow passage into and within all premises are sufficiently wide to allow passage by handicapped persons in wheelchairs; and

(3) All premises within covered multifamily dwelling units contain the following features of adaptable design:

(i) An accessible route into and through the covered dwelling unit;

(ii) Light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

(iii) Usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

**SOURCE:**  42 U.S.C. § 3604(f)(3)(C)).

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 27.:  FAIR HOUSING ACT GUIDELINES**

Congress instructed the Department of Housing and Urban Development (a/k/a HUD) to create guidelines on how to design and construct in compliance with the Fair Housing Act. The guidelines are called the "Fair Housing Act Guidelines." If 25 Bruckner Boulevard does not comply with the Fair Housing Act Guidelines, then it can still comply with the Fair Housing Act by complying with other guidelines that are recognized as a safe harbor.  The recognized safe harbors are as follows:

1) HUD's Fair Housing Act Design Manual (1998);

(2) The American National Standards Institute (herein after "ANSI") section A117.1-1986,

(3) ANSI section A117-1992;

(4) ANSI section A117.1-1998;

(5) The International Building Code 2000

(6) The Code Requirements for Housing Accessibility 2000; or

(7) The 2000 and 2003 International Building Codes.

**SOURCE:** 65 Fed. Reg. 15740, 15755 (Mar. 23, 2000); 68 Fed. Reg. 30413-02 (May 27, 2003); ANSI-A117.1-1986 § 4.1.3, 4.3, 4.6, 4.22, 4.13, 4.16, 4.17, 4.4.1, 4.3.9, 4.25.3 59 FR 33362, Guideline req. 1.

DEFENDANTS' OBJECTIONS:

Defendants object to this instruction as an inaccurate statement of the law, and as failing to include all available safe harbors and standards for compliance.  The Fair Housing Act (42 U.S.C. § 3604, the "**FHA**") does not establish any design standard as necessary for compliance and does not require that any safe harbor be followed. *See* H.R. Rep. No. 100-711, at 27 n.71 (1988), *reprinted in* 1988 U.S.C.A.. at 2188 (recognition of a statutory safe harbor "is not intended to require that designers follow this standard exclusively, for there may be *other local or state standards with which compliance is required* or there may be *other creative methods* of meeting these standards") (*emphasis added*).

Congress chose not to require that any specific technical design criteria be used in order to satisfy the requirements of the FHA. Rather than specifying any dimensional requirements, Congress instead defined discrimination under the Fair Housing Act as a "failure to design and construct" "covered multifamily dwellings" in a manner such that:

(i)     the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;

(ii)    all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and

(iii)   all premises within such dwellings contain the following features of adaptive design:

(I) an accessible route into and through the dwelling;

(II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

(III) reinforcements in bathroom walls to allow later installation of grab bars; and

(IV) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

42 U.S.C. § 3604(f)(3)(C)(i)-(iii).

When taken together with the FHA regulations, which provide that the entrance to the building itself must be accessible, 24 C.F.R. § 100.205(a) (the "**D&C Requirements**"), the FHA is construed as having seven basic requirements of accessibility, usability, and adaptability ("[a] Covered multifamily dwellings for first occupancy after March 13, 1991 shall be designed and constructed to have at least one building entrance on an accessible route …").

Congress chose not to authorize any federal entity to promulgate binding, prescriptive standards (*e.g.* a standard akin to an accessible building code) that builders must follow to ensure accessible design and construction. Instead, Congress specified that there are voluntary safe harbors for compliance and gave HUD limited authority to "provide technical assistance to States and units of local government and other persons to implement the requirements of the Act." 42 U.S.C. § 3604(f)(5)(C).

In issuing the Fair Housing Act Guidelines, HUD made clear that these Guidelines are not mandatory; therefore, deviations from the Guidelines do "not constitute unlawful discrimination." Final Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472, 9473 ("HUD Guidelines Preamble"); *see also* 56 Fed. Reg. at 9479 ("The Department has not categorized the final Guidelines as either performance standards or minimum requirements. The minimum accessibility requirements are contained in the Act... Builders and developers should be to use any reasonable design that obtains a result consistent with the Act's requirements.").

The HUD Guidelines do not set a minimum standard for accessibility under the FHA *United States v Mid-Am. Apt. Communities, Inc.,* 247 F Supp 3d 30, 36 (DDC 2017). Even if all the conditions identified by plaintiff deviate from the specifications in the FHA Guidelines, the guidelines are neither mandatory nor prescribe specific requirements which, if not met, would constitute unlawful discrimination" *United States v Noble Homes, Inc*., 173 F Supp 3d 568, 574 (ND Ohio 2016).

Plaintiff's evidence may be rebutted "on any design element by reference to the specification from any other safe harbor or to the actual ability of handicapped individuals to effectively use the design element." *United States v Mid-Am. Apt. Communities, Inc*., 247 F Supp 3d 30, 37 (DDC 2017).

Compliance with a duly enacted law of a State or unit of general local government that includes the general D&C Requirements can constitute FHA compliances (24 CFR 100.205 [f]). Likewise, compliance with the following suffice to satisfy compliance with the FHA D&C Requirements (the "**Safe Harbors**"):

(i)  ICC A117.1–2009 1 (*see,* 24 CFR §§ 100.205 [e][1], and 100.201[a]).

(ii)  ICC/ANSI A117.1–2003 (*id.*);

(iii)  ICC/ANSI A117.1–1998 (*id.*);

(iv)  CABO/ANSI A117.1–1992 (*id.*),

(v)  ANSI A117.1–1986 (*id.*);

(vi)  The Fair Housing Accessibility Guidelines, March 6, 1991, in conjunction with the Supplement to Notice of Fair Housing Accessibility Guidelines: Questions and Answers About the Guidelines, June 28, 1994 (*see*, 24 CFR § 100.205[f][i]);

(vii)  Fair Housing Act Design Manual, published by HUD in 1996, updated in 1998 *see*, 24 CFR § 100.205[f][ii]);

(viii)  2000 ICC Code Requirements for Housing Accessibility (CRHA), published by the International Code Council (ICC), October 2000 (with corrections contained in ICC–issued errata sheet), if adopted without modification and without waiver of any of the provisions (*see*, 24 CFR § 100.205[f][iii]);

(ix)  2000 International Building Code (IBC), as amended by the 2001 Supplement to the International Building Code (2001 IBC Supplement), if adopted without modification and without waiver of any of the provisions intended to address the Fair Housing Act's design and construction requirements (*see*, 24 CFR § 100.205[f][iv]);

(x)  2003 International Building Code (IBC), if adopted without modification and without waiver of any of the provisions intended to address the Fair Housing Act's design and construction requirements, and conditioned upon the ICC publishing and distributing a statement to jurisdictions and past and future purchasers of the 2003 IBC stating, "ICC interprets Section 1104.1, and specifically, the Exception to Section 1104.1, to be read together with Section 1107.4, and that the Code requires an accessible pedestrian route from site arrival points to accessible building entrances, unless site

impracticality applies. Exception 1 to Section 1107.4 is not applicable to site arrival points for any Type B dwelling units because site impracticality is addressed under Section 1107.7" (*see*, 24 CFR § 100.205[f][v]);

(xi)     2006 International Building Code; published by ICC, January 2006, with the January 31, 2007, erratum to correct the text missing from Section 1107.7.5, if adopted without modification and without waiver of any of the provisions intended to address the Fair Housing Act's design and construction requirements, and interpreted in accordance with the relevant 2006 IBC Commentary; (*see*, 24 CFR § 100.205[f][vi]);

(xii)    2009 International Building Code, published by ICC (http://www.iccsafe.org), and interpreted in accordance with the relevant 2009 IBC Commentary (*see*, 24 CFR § 100.205[f][vii]);

(xiii)   2012 International Building Code, published by ICC (http://www.iccsafe.org), and interpreted in accordance with the relevant 2012 IBC Commentary (*see*, 24 CFR § 100.205[f][viii]);

(xiv)    2015 International Building Code, published by ICC (http://www.iccsafe.org), and interpreted in accordance with the relevant 2015 IBC Commentary(*see*, 24 CFR § 100.205[f][ix]);and

(xv)     2018 International Building Code, published by ICC (http://www.iccsafe.org), and interpreted in accordance with the relevant 2018 IBC Commentary (*see*, 24 CFR § 100.205[f][x]).

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 28.: FAIR HOUSING ACT GUIDELINES**

Accessibility itself is the ultimate touchstone by which conformity with the law is determined, and may be established by compliance with a guideline, a safe harbor, a construction industry tolerance, or the actual ability of a handicapped individual to effectively use the design element.

> *Fair Hous. Just. Ctr., Inc. v. 203 Jay St. Assocs., LLC*, No. 21 CV 1192 NGGJRC, 2022 WL 3100557, at *8 (EDNY, Aug. 4, 2022); *United States v. Mid-America Apartment Communities, Inc*., 247 F.Supp.3d 30, 35 (D.DC 2017).

You will hear testimony as to whether various conditions at the subject property comply with various guidelines or safe harbors. Strict adherence to the guidelines or safe harbors is not mandatory, and a failure to meet guidelines or safe harbors does not constitute unlawful discrimination. Guidelines are one way in which an architect or developer may achieve compliance with the law's accessibility requirements, but there are other ways to achieve compliance. Architects and developers may choose to depart from the guidelines and seek alternative ways to demonstrate that they have met the requirements of the law governing accessibility.

> *Barker v. Emory University*, 2006 WL 5153081 (N.D.Ga); 56 FR 9472, 9478; *Barker v. Niles Bolton Associates, Inc.*, 316 Fed. Appx. 933 [(1]1th Cir. Mar. 2, 2009); *Montana Fair Housing, Inc., et al. v. Nelson,* HUDALJ 05-068-FH, 2006 WL 2556666 (Bankr. D. Minn. Aug. 24, 2006); *Memphis Ctr. for Indep. Living v. Richard & Milton Grant Co.*, 01-2069-D, 2004 WL 6340158 (W.D. Tenn. June 29, 2004)

When considering whether the defendants have complied with guidelines or safe harbors, you may consider evidence of accepted construction tolerances. Tolerances are permitted variations from given dimensions, locations, or alignments, based on field, material, manufacturing, and workmanship conditions, which are commonly understood and accepted in the building industry.

> *Access Now, Inc. v. Ambulatory Surgery Center Group, Ltd.*, 2001 WL 617529, at *3 (S.D.Fla.); *Brisbon v. Corkill*, 151 Fed.Appx. 576, 2005 WL 2712917 [(9]9th Cir.); *Chapman v. Chevron Stations, Inc.*, supra, 2011 WL 4738309 at *7-8 (E.D. Cal.)

**PLAINTIFF'S OBJECTIONS:**

"[O]nce Plaintiffs have shown that a construction feature does not meet the [Fair Housing Act Accessibility] Guidelines, Defendants undoubtedly face a heavy burden of demonstrating accessibility." *Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, 210 Fed.Appx. 469, 481-482 (6th Cir. 2006); and *United States v. Tanski,* 2007 WL 1017020, at *11 (N.D.N.Y. Mar. 30, 2007). "Objective standards provide clear guidance on how to comply with these requirements; conversely, requiring a plaintiff to make an ill-defined subjective showing of

inaccessibility—that is, allowing a defendant to escape liability simply by showing that *some* disabled persons can access a property—cuts against the 'broad remedial intent of Congress embodied in the [FHA].'" *Equal Rights Center v. Equity Residential,* 2016 WL 1258418, at *12 (D.Md. Mar. 31, 2016) citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982).

While a failure to comply with the HUD Guidelines or other FHA safe harbors does not automatically impose liability, a defendant must demonstrate that they comply with an objective accessibility standard. *United States v. Atlantic Development Group, LLC,* 2020 WL 3421095, at *8 (S.D.N.Y. May 12, 2020) ("But at the same time, courts recognize that the Guidelines are relevant evidence for proving violation of the FHA."); *Bowman v. RLB Investment Partners, LLC*, 2016 WL 7326622, at *4 (E.D.Tex., 2016); and *United States v. Shanrie Co.*, 2007 WL 980418, at *11 (S.D. Ill. Mar. 30, 2007) ("if defendants do not comply with the specifications within the [HUD Accessibility] Guidelines, they still bear the burden of proving that they nonetheless have not violated the Act." ). And, in certain situations, a defendant's failure to comply with any recognized accessibility standard is sufficient to establish liability under the FHA. *See United States v. Hallmark Homes, Inc.*, 2003 WL 23219807, at *8 (D. Idaho Sept. 29, 2003); *United States v. Tanski,* 2007 WL 1017020, at *14 (N.D.N.Y. Mar. 30, 2007) (holding that Section 3604(f)(3)(C) "requires compliance with an objective accessibility standard broadly applicable to handicapped people" and "wholly subjective declarations are not probative on the question of whether the apartments are designed and constructed" in compliance with the FHAA); and *Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, *supra,* 210 Fed.Appx. at 482 (holding that defendant failed to demonstrate compliance with the FHAA by means other than those set forth by the applicable HUD guidelines).  In addition, alleged compliance with alleged "industry-accepted" construction tolerances will not excuse violations of specific objective standards for accessibility. *Equal Rights Center v. Equity Residential*, 2016 WL 1258418, fn. 27 (D.Md.  Mar. 31, 2016); and *United States v. Tanski,* 2007 WL 1017020, at *15 (N.D.N.Y. Mar. 30, 2007) ("the anecdotal experiences of individual handicapped people residing [at the property] do not raise a material question of fact regarding whether the apartments were designed and constructed in compliance with the Fair Housing Act.").

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 29.: REQUIREMENT THAT THE PUBLIC AND COMMON USE AREAS ARE READILY ACCESSIBLE TO AND USABLE BY HANDICAPPED PERSONS.**

1) "**Public or Common use areas**" means: rooms, spaces or elements inside or outside of a building that are made available for the use of residents of a building or the guests thereof. These areas include hallways, lounges, lobbies, public restrooms, laundry room, refuse rooms, mail rooms, recreational areas, parking areas, and passageways among and between buildings, including sidewalks, curbs and doors into the buildings.

A public or common use area that complies with the Fair Housing Act Guidelines, Fair Housing Design Manual, or the appropriate requirements of ANSI A117.1- 1986 is accessible within the meaning of this section.

(2) The phrase "**readily accessible to and usable by**" is synonymous with accessible. "**Accessible**" means that the public or common use areas of the building can be approached, entered, and used by individuals with physical handicaps.

(3) "**Accessible route**" means a continuous unobstructed path connecting accessible elements and spaces in a building or within a site that can be negotiated by a person with a severe disability using a wheelchair and that is also safe for and usable by people with other disabilities. Interior accessible routes may include corridors, floors, ramps, elevators and lifts. Exterior accessible routes may include parking access aisles, curb ramps, walks, ramps and lifts. Stairs shall not be part of the **accessible route.**

A route that complies with the appropriate requirements with the Fair Housing Act Guidelines, Fair Housing Design Manual, or the appropriate requirements of ANSI A117.1-1986 is an accessible route.

(4) "**Slope**" means the relative steepness of the land between two points.

(5) "**Running Slope**" means the slope of the pedestrian way that is parallel to the direction of travel. The maximum slope for a **running slope** for a ramp in new construction shall be 1:12 (8.3%).

(6) "**Cross-slope**" means the slope of the pedestrian way that is perpendicular to the direction of travel. No where shall the **cross slope** of an **accessible route** exceed 1:50 (2.0%).

(7) "**Vehicular route**" means a route intended for vehicular traffic, such as a street, driveway or parking lot.

(8) "**Ramp**" is an accessible route with a slope greater than 1:20 (5%). The least possible slope shall be used for any **ramp**.

(9) **Curb Ramps** shall be provided wherever an accessible route crosses a curb.


**SOURCE:** 42 U.S.C. § 3604(f)(3)(C))(1) -  65 Fed. Reg. 15740, 15755 (Mar. 23, 2000); 68 Fed. Reg. 30413-02 (May 27, 2003); ANSI-A117.1-1986 § 4.1.3, 4.3, 4.6, 4.22, 4.13, 4.16, 4.17, 4.4.1, 4.3.9, 4.25.3 59 FR 33362, Guideline req. 1.


DEFENDANTS' OBJECTIONS:

This is an unnecessarily complex instruction that is likely to confuse jurors.  Jurors should rely upon the parties' experts' explanations of the applicable guidelines. In addition, there are at least 16 design standards that can be used for compliance (see above).

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 30.:  REQUIREMENTS FOR AN ACCESSIBLE ROUTE INTO AND THROUGH THE COVERED DWELLING UNIT.**

      **Thresholds:** Pursuant to the Fair Housing Guidelines to determine whether a threshold assembly is part of an accessible route, the following standard applies:

    (1) At the primary entrance door to each unit, the thresholds may be no higher than 1 ¼ inches.

    (2) Further the slope for such thresholds must be beveled at a slope no greater than 1:2.

**SOURCE:** 42 U.S.C. § 3604(f)(3)(c)(3)(I), 56 Fed. Reg. 9507. *United States v. Quality Built Construction, Inc*., 309 F. Supp. 2d 767, 776 (E.D.N.C. 2003), FHA Design Manual 4.12, FHA Guideline Req. 4.

DEFENDANTS' OBJECTIONS:

This is an unnecessary instruction. Jurors should rely upon the parties' experts' explanations of the applicable guidelines. In addition, there are at least 16 design standards that can be used for compliance (see above).

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 31.: REQUIREMENTS FOR COMPLIANCE WITH LIGHT SWITCHES, ELECTRICAL OUTLETS, THERMOSTATS, AND OTHER ENVIRONMENTAL CONTROLS IN ACCESSIBLE LOCATIONS.**

In order for a thermostat to be designed or built in compliance with the Fair Housing Act Guidelines or ANSI section A117.1-1986, the thermostat must be mounted in an accessible location.

An accessible location is where the operable parts of the controls are located no higher than 48 inches for a forward approach for a person in a wheelchair, or 54 inches if a side (or parallel) approach is possible.

**SOURCE**: 42 U.S.C. § 3604(f)(3)(c)(3)(ii), 56 Fed. Reg. 9507, ANSI-A117.1-1986 s. 4.25, 56 Fed. Reg. at 9507, *United States v. Quality Built Construction, Inc*., 309 F.Supp. 2d 756, 765 (E.D. N.C. 2003), *Montana Fair Housing, Inc. v. American Capital Development, Inc*., 81 F. Supp. 2d 1057 (D.C. Mt. 1999)

DEFENDANTS' OBJECTIONS:

This is an unnecessarily complex instruction that is likely to confuse jurors. Jurors should rely upon the parties' experts' explanations of the applicable guidelines. In addition, there are at least 16 design standards that can be used for compliance (see above).

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 32.: REQUIREMENTS FOR USABLE KITCHENS SUCH THAT AN INDIVIDUAL IN A WHEELCHAIR CAN MANEUVER ABOUT THE SPACE.**

Pursuant to the Department of Housing and Urban Development Fair Housing Guidelines, Fair Housing Design Manual, or ANSI section A117.1-1986, to determine what is "a usable kitchen such that an individual in a wheelchair can maneuver about the place, the following standards apply:

(1) A clear floor space at least 30 inches by 48 inches must be provided that allows a parallel approach by a person in a wheelchair is provided at the range or cooktop and sink, and either a parallel or forward approach is provided at oven, dishwasher, refrigerator/freezer or trash compactor.

(2) Clearance between counters and all opposing base cabinets, countertops, appliances or walls must be at least 40 inches.

(3) In U-shaped kitchens with sink or range or cooktop at the base of the "U," a 60-inch turning radius must be provided to allow parallel approach, or base cabinets are removable at that location to allow knee space for a forward approach.

**SOURCE:** 56 Fed. Reg. 9511; 42 U.S.C. § 3604(f)(3)(c)(3)(iii).

DEFENDANTS' OBJECTIONS:

This is an unnecessarily complex instruction that is likely to confuse jurors. Jurors should rely upon the parties' experts' explanations of the applicable guidelines. In addition, there are at least 16 design standards that can be used for compliance (see above).

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 33.: REQUIREMENTS AS TO USABLE BATHROOMS SUCH THAT AN INDIVIDUAL IN A WHEELCHAIR CAN MANEUVER ABOUT THE SPACE.**

Pursuant to the Department of Housing and Urban Development Fair Housing Guidelines, or Fair Housing Design Manual to determine what is "a usable bathroom such that an individual in a wheelchair can maneuver about the place" the following standards apply:

> (1) Sufficient maneuvering space is provided within the bathroom for a person using a wheelchair or other mobility aid to enter and close the door, use the fixtures, reopen the door and exit. Doors may swing into the clear floor space provided at any fixture if the maneuvering space is provided. Maneuvering spaces may include any knee space or toe space available below bathroom fixtures.

> (2) Clear floor space is provided at fixtures as shown in the below diagrams. Clear floor space at fixtures may overlap.

> (3) If full knee space is provided below the vanity for a front approach, the vanities and lavatories must be installed with the centerline of the fixture a minimum of 1′3″ horizontally from an adjoining wall or fixture

> (4) If knee space is not provided below the vanity, and a parallel approach is necessary, the vanities and lavatories must be installed with the centerline of the fixture a minimum of 2 foot (24″) horizontally from an adjoining wall or fixture.

**SOURCE:** 56 Fed. Reg. 9511, 9512-14; 42 U.S.C. § 3604(f)(3)(c)(3)(iii); *United States v. Quality Built Construction, Inc.*, 309 F. Supp. 2d 767, 777 (E.D.N.C. 2003); Fair Housing Design Manual, 7.47.

DEFENDANTS' OBJECTIONS:

This is an unnecessary instruction. Jurors should rely upon the parties' experts' explanations of the applicable guidelines. In addition, there are at least 16 design standards that can be used for compliance (see above).

**Proposed Jury Instruction No. 34. : Liability of Defendants for the Acts of their Subcontractors.**

      Under the Fair Housing Act, Defendants are responsible for the acts of their employees,

contactors, subcontractors or agents.

**SOURCE:** *Meyer v Holley*, 537 U.S. 280, 154 L. Ed. 2d 753, 123 S. Ct. 824, 830 (2003); *Alexander v. Riga*, 208 F.3d 419, 427-28 (3rd Cir. 2000); *Coates v. Bechtel*, 811 F.2d 1045, 1051 (7th Cir. 1987); *Phiffer v. Proud Parrot Motor Hotel*, 548 F.2d 548, 552 (9th Cir. 1980) *Leal v. Hobbs*, 245 Ga. App. 443, 444-445, 538 S.E.2d 89, 91 (Ct. App. 2000); O.C.G.A. s. 51-2-5; (2006)

OWNER DEFENDANTS' OBJECTION

Duplicative of respondeat superior charge; this is not a disputed issue; this instruction is unnecessary and has the potential to confuse jurors.

**Proposed Jury Instruction No. 35.: Violation of the Fair Housing Act is automatically a violation of the New York State and New York City anti-discrimination laws.**

The New York State Human Rights Law prohibits failing to design and construct covered multifamily dwellings in an accessible manner, discriminatory notices or statements, denying or withholding housing accommodations because of disability, and discrimination in the terms, conditions, or privileges of sale and rental because of disability, and refusing reasonable modifications and accommodations.

The New York City Human Rights Law prohibits discrimination because of disability in the terms, conditions or privileges of sale and rental of a housing accommodation, and includes refusals to permit reasonable accommodations.

If you find that the plaintiff has proved by a preponderance of the evidence that the defendants committed discrimination under the Fair Housing Act, then you must also find that the plaintiff proved by a preponderance of the evidence that the defendants have violated the New York State Human Rights Law, New York State Civil Rights Law, and the New York City Human Rights Law.

**SOURCE:** New York State Executive Law§ 296(5) and (18); See Administrative Code §§ 8-107(5) and 27-292.8 which contains the accessibility requirements under the NYC Building Code; *Phillips v. City of New York,* 66 A.D.3d 170, 176, 884 N.Y.S.2d 369 (1st Dept. 2009) (a violation of the ADA is automatically deemed to be a violation of the New York State and New York City disability antidiscrimination laws because "the State HRL provides protections broader than the ADA; and the CityHRL is broader still"); and *see also Kreisler v. Second Avenue Diner*, 2012 WL 3961304, at *14, affirmed by 731 F.3d 184 (2nd Cir. 2013). *Gordon v. PL Long Beach*, 74 A.D.3d 880, 903 N.Y.S.2d 461 (2nd Dept. 2010) (violation of New York State Human Rights Law is also a violation of the New York State Civil Rights Law); and *Doe v. Deer Mountain Camp*, 682 F.Supp.2d 324, 350 (S.D.N.Y. 2010).

**Proposed Jury Instruction No. 36.: New York City Human Rights Law**

      The New York City Human Rights Law is to be construed liberally for the

accomplishment of the uniquely broad and remedial purposes thereof. The New York City

Human Rights Law imposes greater obligations than what is required under the Fair Housing

Act.

**SOURCE:** *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (confirming legislative intent to abolish "parallelism" between the NYCHRL and the ADA); and *Phillips v. City of New York*, 66 A.D.3d 170, 884 N.Y.S.2d 369, 378 (1st Dept. 2009) ("And unlike the ADA, there are no accommodations that may be 'unreasonable' if they do not cause undue hardship.").

**Proposed Jury Instruction No. 37.: Discrimination under the New York City Human Rights Law**

The New York City Human Rights Law requires a housing provider to be accessible to wheelchair users, unless it proves that doing so would be an undue hardship. Once the plaintiff establishes that a feature of 25 Bruckner Boulevard is not accessible to wheelchair users, the defendants can prove undue hardship by demonstrating that making that feature of 25 Bruckner Boulevard accessible to wheelchair users would be architecturally infeasible. If the plaintiff proves that a feature of 25 Bruckner Boulevard is not accessible to wheelchair users, then a housing provider defendant has the burden of proving undue hardship and this burden of proof never shifts to the plaintiff to rebut.

**SOURCE:** Administrative Code of the City of New York § 8-102(18) ("undue hardship" is an affirmative defense) *See Jacobsen v. New York City Health and Hospitals Corp.,* 22 N.Y.3d 824, 835 (2014). *see also de la Rosa v. 597 Broadway Dev. Corp.*, 2015 WL 7351540, at * 20 (S.D.N.Y. Aug. 4, 2015), report and recommendation adopted in part,  S2015 WL 7308661 (S.D.N.Y. Nov. 19, 2015) (denying summary judgment to creating accessibility via a platform lift because "defendants have not shown beyond triable dispute that such a proposal is architecturally infeasible."). The NYCHRL requires public accommodations to "make the main entrance to a building accessible unless doing so creates an undue hardship, or is architecturally infeasible." *In re Matter of John Rose v. Co-op City of New York d/b/a Riverbay Corp. And Vernon Cooper,* 2010 WL 8625897, at *2 (N.Y.C. Comm. Hum. Rts. Nov. 18, 2010), aff'd sub nom. *Riverbay Corp. v. New York City Commn. on Human Rights*, 2011 N.Y. Misc. Lexis 7105 (Sup.Ct.Bx. Cty., Sept. 9, 2011).

**<u>PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 38.: DAMAGES GENERALLY</u>**

      The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from a defendants' alleged violation of the law. If you find that Fair Housing Justice Center, Inc. has proven a violation of the law based on the way I have explained it, then you must consider the amount of damages to be awarded.

      If you find in favor of the Fair Housing Justice Center, then you will award the Fair Housing Justice Center such actual or compensatory damages as you find from a preponderance of the evidence were proximately caused by the acts of one or more of the defendants. In determining such damages, you shall consider that a plaintiff such as the Fair Housing Justice Center is entitled to be compensated for:

      1. the costs of diverting its resources away from its other programs and activities in order to investigate the defendant's unlawful conduct; and

      2. the frustration of its mission and purpose caused by the defendants' unlawful conduct.

      In determining the amount to award the Fair Housing Justice Center you may consider the amount necessary to counteract defendants' wrongdoing.

**SOURCE:** *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *Fair Housing of Marin v. Combs*, 285 F.3d 899, 902-05 (9th Cir. 2002); *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 29 (D.C. Cir. 1990).

**DEFENDANTS' OBJECTIONS:**

The *Havens* decision only addressed the organization's standing issue at the pleadings stage, and the Supreme Court noted that the organization will "have to demonstrate at trial that it has indeed suffered impairment in its role of facilitating open housing before it will be entitled to judicial relief." *Havens* (supra) at 379 fn 21. Defendants further object to evidence not previously disclosed of any damages.

**DEFENDANTS' PROPOSED CHARGE**

      The purpose of the law of damages is to award, as far as possible, just and fair

compensation for the loss, if any, which resulted from a defendants' alleged violation of the law. If you find that Fair Housing Justice Center, Inc. has proven a violation of the law based on the way I have explained it, then you must consider whether they incurred any monetary damages as a result of that violation.

The Fair Housing Justice Center must prove by a preponderance of the evidence that they actually incurred monetary damages that were proximately caused by the acts of one or more of the defendants. In determining whether to award such damages and the amount of the award, you shall consider that a plaintiff such as the Fair Housing Justice Center is entitled to be compensated for:

1. the costs of diverting its resources away from its other programs and activities in order to investigate the defendant's unlawful conduct; and

2. the frustration of its mission and purpose caused by the defendants' unlawful conduct.

In determining the amount to award the Fair Housing Justice Center you may consider the amount necessary to counteract defendants' wrongdoing.

**SOURCE:** *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *Fair Housing of Marin v. Combs*, 285 F.3d 899, 902-05 (9th Cir. 2002); *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 29 (D.C. Cir. 1990).

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 39.: COMPENSATORY DAMAGES TO FAIR HOUSING JUSTICE CENTER**

If you find that there has been a violation of the Fair Housing Act and thus housing discrimination, then you will award Fair Housing Justice Center such compensatory damages as you find from a preponderance of the evidence were proximately caused by the acts of the defendants.

In determining such damages, you shall consider that a plaintiff such as Fair Housing Justice Center is entitled to be compensated for:

> (1) Diversion of Resources: These damages may be awarded to Fair Housing Justice Center if it is shown that the organization spent its resources on the discriminatory situation caused either defendant. These damages may be measured by the cost of Fair Housing Justice Center's investigation.

> (2) Frustration of Mission: These damages may be awarded to Fair Housing Justice Center's if it is shown that the organization will have to spend money in the future to repair the damage caused by either defendant to Fair Housing Justice Center's mission of promoting equal housing opportunities.

**SOURCE**: *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *Fair Housing of Marin v. Combs*, 285 F.3d 899, 902-05 (9th Cir. 2002); *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 29 (D.C. Cir. 1990).

**DEFENDANTS' OBJECTIONS:**

Defendants object to evidence not previously disclosed of any damages.

**DEFENDANTS PROPOSED JURY INSTRUCTION NO. 40.: JOINT AND SEVERAL LIABILITY**

An architect is not liable under the Fair Housing Act simply because he or she was involved in a construction project.  Participation in the project, without participation in any wrongdoing, cannot form the basis of liability.  An architect may only be liable to the extent that the design – rather than the construction – violated the Fair Housing Act.

**SOURCE:** *Barker v. Niles Bolton Assoc., Inc.*, 316 Fed Appx 933, 942 (11th Cir 2009); *Shaw v. Cherokee Meadows, LP*, 431 F Supp 3d 1336 (ND Okla 2019).

PLAINTIFF'S OBJECTIONS:

The FHA imposes "broad liability on all those people and entities that are involved in designing and constructing the various aspects of a covered multifamily dwelling." *United States v. Tanski*, 2007 WL 1017020, at \*22 (N.D.N.Y. Mar. 30, 2007).  It is well established that "[w]hen a group of entities enters into the design and construction of a covered dwelling, all participants *in the process as a whole* are bound to follow the FHA." *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.*, 3 F. Supp. 2d 661, 665 (D.Md. 1998) (emphasis added); and *U.S. v. Quality Built Const., Inc*., 309 F.Supp.2d 756, 761–62 (E.D.N.C., 2003) ("where an architect draws noncomplying plans, which the builder follows, both the architect and builder are liable as 'wrongful participants.').

"Entities who are involved in the design and construction of housing covered by the FHA must make it their business to ensure that such housing meets the accessibility requirements of the FHA." *U.S. v. Shanrie Co., Inc.,* 2007 WL 980418, at \*8 (S.D.Ill. Mar. 30, 2007) ("When Netemeyer sealed the architectural plans, it gave its professional approval. Entities who are involved in the design and construction of housing covered by the FHA must make it their business to ensure that such housing meets the accessibility requirements of the FHA. Therefore, the Court finds that Netemeyer is liable for violations."). Moreover, an affirmative act of discrimination is not required for an owner or other participant to be responsible for Fair Housing Act compliance. *National Fair Housing Alliance, Inc. v. S.C. Bodner Co., Inc.*, 844 F.Supp.2d 940, 945 (S.D. Ind., 2012) (Accordingly, the court will not read into the Act a requirement of an "affirmative act," when the same is unnecessary for the owners to have a discriminatory intent.").

**Proposed Jury Instruction No. 41.:  Standard of Liability for Punitive Damages**

In addition to compensatory damages, the fair housing laws involved in this case allow a jury to award punitive damages against one or more  defendants. Punitive damages may be awarded by a jury for two reasons: 1) to punish the defendants for their misconduct; or 2) to deter the defendants, and other persons, from acting in the same way in the future.

If you find that any of the defendants acted intentionally, willfully, or with reckless disregard to the civil rights of any of the plaintiffs, then you may, but are not required to, award punitive damages. An individual acts intentionally by acting knowingly, even if he was unaware that his conduct was unlawful.

You may also award punitive damages if you determine that Defendants, or any of their employees or agents, acted with reckless disregard to the rights of  the Plaintiff. Plaintiff must show by a preponderance of evidence that Defendants acted with reckless disregard as to whether their conduct was unlawful. An act is undertaken in reckless disregard if a person knew or should have known that the plaintiff was in danger of being harmed, and that the defendant could have taken steps to ensure that the plaintiff was not harmed or that the harm to the plaintiff was corrected, but that the defendant failed to take those steps.


**PLAINTIFF'S PROPOSED TEXT OBJECTED TO BY DEFENDANTS**

In deciding whether to impose punitive damages, you may consider, amongst other things: the efforts Defendants made to comply with fair housing laws; their efforts to train their employees about fair housing laws; whether Defendants adopted any policies in regard to fair housing; whether Defendants posted the fair housing poster as required by federal law; or whether Defendants took any steps to prevent future harm once it learned of the actions of their

employees or agents, such as by providing training in regard to fair housing.

**SOURCE:** *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535 (1999); *Smith v. Wade*, 461 U.S. 30 (1983); *United States v. Space Hunters*, 429 F.3d 416, 427 (2d Cir. 2005); *Tolbert v. Queens College*, 242 F.3d 58, 77 (2d Cir. 2001) (punitive damages may be awarded for a civil rights claim where defendant's conduct shows "reckless or callous indifference to the federally protected rights of others"); *Greenbaum v. Heandelsbanken*, 979 F. Supp. 973, 982-83 (S.D.N.Y. 1997) (holding that the preponderance of evidence standard should apply to punitive damages deliberations involving an employment discrimination claim under the New York City Administrative Code); *Roy Export, Etc. v. C.B.S.*, 503 F. Supp. 1137, 1154 (S.D.N.Y. 1980) (upholding a punitive damages award in a copyright infringement matter where the court concluded that the jury could have reasonably found that defendants acted with reckless indifference).

**DEFENDANTS' OBJECTIONS:**
Defendants object to this entire charge. It is prolix, inaccurate and unnecessarily complex instruction that is likely to confuse jurors.

DEFENDANTS' PROPOSED CHARGE:

PUNITIVE DAMAGES
If you find that the Defendants guilty of housing discrimination, the law allows, but does not require you to award punitive damages. The purpose of such an award is to punish a wrongdoer for misconduct and to warn others against engaging in the same sort of misconduct. To be entitled to punitive damages, the Plaintiffs must prove that the Defendants acted with malice or reckless indifference to the Plaintiffs' rights. This means that the Plaintiff must demonstrate that the Defendants perceived a risk, that they knew their decision would deny the Plaintiffs' of their rights, and they chose to disregard the risk. If you decide that punitive damages are appropriate, then you may award an amount which all the jurors agree is proper. In fixing that amount, you should consider how offensive the conduct in question was, whether the amount of damages has a reasonable relationship to the actual damages, and what amount is needed, considering the Defendants' financial situation, so as to prevent repetition. If you award punitive damages, you should fix the amount using sound discretion, and not be swayed by sympathy for or dislike of any party.
Source: 42 U.S.C. §1981(b)(1); Federal Jury Practice and Instructions §104.07 (4th ed. 1987 and Supp. 1997).

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 42.: FACTORS TO CONSIDER IN ASSESSING PUNITIVE DAMAGES**

In assessing damages, you should bear in mind that the purpose of punitive damages is not to compensate the injured party. Rather, punitive damages are awarded to punish the defendant and to serve as an example and a warning to others not to engage in such conduct.

If you determine that it is appropriate to award punitive damages, you should consider the following questions: What was the nature and extent of the harm done? What was Defendants' conduct after they were informed of the discriminatory conduct alleged by the Plaintiff to have taken place? What amount is needed, considering Defendants' financial conditions, to prevent future repetition?

If you decide to award punitive damages, they should be large enough to act as a deterrent. An award of punitive damages may cause the defendant some hardship, but that is an essential part of the function of punitive damages.

**SOURCE:** *Smith v. Wade*, 461 U.S. 30, 49, 54 (1983); *Phillips v. Hunter Trails Community Ass'n*. 685 F.2d 184, 191 (7th Cir. 1982); *Miller v. Apartments & Homes of New Jersey, Inc.*, 646 F.2d 101 (3d Cir. 1981).

**DEFENDANTS' OBJECTIONS:**

Defendants object to this entire charge. It is  duplicative, prolix, inaccurate and unnecessarily complex instruction that is likely to confuse jurors.

**Proposed Jury Instruction No. 43.: Punitive Damages under the New York City Human Rights Law**

Under the New York City Human Rights Law, a jury may award a plaintiff punitive damages if the defendant's actions amount to willful or wanton negligence or recklessness, or where there was a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

Punitive damages may be awarded for the purpose of punishing a defendant for that defendants' wrongful conduct and to deter others from engaging in similar wrongful conduct. Punitive damages are intended to protect the community, and to be an expected expression of the jury's indignation at a defendants' misconduct. You must determine whether to award punitive damages against each defendant separately. You may find a defendant liable for punitive damages even if you award no actual damages or only a small amount of actual damages.

 **SOURCE**: *Chauca v. Abraham*, 30 N.Y.3d 325 (2017); *see also Cush-Crawford v. Adchem Corp.*, 271 F.3d 352 (2d Cir. 2001); *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 374 (2d Cir. 1988); *Goonewardena v. N.Y. State Workers' Comp. Bd.*, No. 09 Civ. 8244, 2016 WL 7439414, at *10 (S.D.N.Y. Feb. 9, 2016), *adopted by* 2016 WL 7441695 (S.D.N.Y. Dec. 22, 2016) (Abrams, J.).

**DEFENDANTS' OBJECTIONS**

Defendants object to this entire charge. It is duplicative, prolix, inaccurate and unnecessarily complex instruction that is likely to confuse jurors.

**Proposed Jury Instruction No. 44.: Punitive Damages under the New York City Human Rights Law**

In determining whether  to award Fair Housing Justice Center, Inc., you must keep in mind that punitive damages are not intended to, and may not be used to, compensate plaintiff for injuries, but rather to punish a defendant for wrongful conduct and to deter similar conduct in the future. Accordingly, in determining whether to award punitive damages and in fixing a sum to be awarded, you should consider the degree to which a defendant should be punished for their wrongful conduct and the degree to which an award of one sum or another will deter that defendant, or entities like them, from committing wrongful acts in the future.

In calculating a punitive damages award, you should consider:

1. the nature and reprehensibility of the defendant's conduct, including the character of the wrongdoing and the defendant's awareness of what harm the conduct caused or was likely to cause;

2. the amount of time the defendant engaged in reprehensible conduct; and

3. the defendant's financial condition and the impact your punitive damages award will have on the defendant.

---

**SOURCE:** *Geressy v. Digital Equip. Corp.*, 950 F. Supp. 519, 523 (E.D.N.Y. 1997) ("The New York Court of Appeals recently explained the legal principle behind New York punitive damage awards:  'We have consistently adhered to the view that the purpose of punitive damages is solely to punish the offender and to deter similar conduct on the part of others.  Punitive damages are not intended to compensate or reimburse the plaintiff." ') (quoting *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 316 (1994) (citation omitted)); *Caravantes v. 53rd St. Partners, LLC*, 2012 WL 3631276, at *25 (S.D.N.Y. Aug. 23, 2012) ("An award should be limited to the amount reasonably necessary to achieve the end [of punishing a defendant and deterring him and others from similar conduct in the future], and should not be so high as to result in the financial ruin of the defendant.").

**DEFENDANTS' OBJECTIONS**

Defendants object to this entire charge. It is  duplicative, prolix, inaccurate and unnecessarily complex instruction that is likely to confuse jurors.

---

## PROPOSED CONCLUDING INSTRUCTIONS

I will now provide you with general instructions concerning how you should go about arriving at your verdict.  Your verdict is essentially your decision regarding the facts in this case, and more specifically, whether or not they demonstrate by a preponderance of the evidence that defendants have broken the law.

**Proposed Jury Instruction No. 45.:  Right to See Exhibits and Hear Testimony; Communications with Court**

You are about to go into the jury room and begin your deliberations.  If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room.  If you want any of the testimony read back to you, you may also request that.  Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.

Your requests for exhibits or testimony -- in fact, any communication with the Court -- should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

**SOURCE:**  4 Modern Fed. Jury Instr.-Civil 78.01, 78-1.

**Proposed Jury Instruction No. 46.:  Communications Between Court and Jury During Jury's Deliberations**

If it becomes necessary during your deliberations to communicate with me, you may send a note by a marshal, signed by your foreperson or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me by any means other than a signed writing.  I will never communicate with any member of the jury on any subject touching the merits of the case otherwise than in writing, or orally here in open court.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 106:08 (6th ed.).

**Proposed Jury Instruction No. 47.:  Duty to Deliberate**

Your verdict must represent the considered judgment of each of you. In order to return a verdict, it is necessary that each juror agrees. Your verdict must be unanimous.

In order to prevail, plaintiff must sustain his burden of proof by a preponderance of the evidence with respect to each element of its claim. If you find that plaintiff has succeeded in doing so, you should return a verdict in its favor on that claim. If you find that plaintiff failed to sustain its burden on any element of its claim, you should return a verdict against plaintiff. Similarly, if you find that defendants have failed to sustain its burden with respect to any element of their affirmative defenses, you must return a verdict against defendants on that affirmative defense.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregard of individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges -- judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 106:01 (6th ed.).

**Proposed Jury Instruction No. 48.:  Election of Foreperson**

Upon retiring to the jury room, you will select one of you to act as your foreperson.  The foreperson will preside over your deliberations and will be your spokesperson here in court.  Verdict forms have been prepared for your convenience.

*[Read forms of verdict].*

You will take these forms to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form that sets forth the verdict upon which you unanimously agree.  You will then return with your verdict to the courtroom.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 106:04 (6th ed.).

**Proposed Jury Instruction No. 49.:  Verdict Forms -- Jury's Responsibility**

Nothing said in these instructions and nothing in any verdict form prepared for your convenience is meant to suggest or convey in any way or manner any suggestion or hint as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 106:07 (6th ed.).

**Proposed Jury Instruction No. 50.:  Return of Verdict**

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you should be in agreement with the verdict which is announced in Court.  Once your verdict is announced by your foreperson in open Court and officially recorded, it cannot ordinarily be revoked.


**SOURCE:**  4 Modern Fed. Jury Instr.-Civil 78.01, 78-6.