UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FAIR HOUSING JUSTICE CENTER, INC.,

                                        Plaintiff,

            v.

BRUCKNER TOWER, LLC, CARNEGIE
MANAGEMENT INC., KARL FISCHER
ARCHITECTURE PLLC and FISCHER + MAKOOI
ARCHITECTS PLLC,

                                        Defendants.

Case No.: 1:19-cv-08622-DLC

## CONSENT JUDGMENT

On September 17, 2019, plaintiff Fair Housing Justice Center, Inc. ("*Plaintiff*" or "*FHJC*")

filed a complaint (the "*Complaint*") in the United States District Court, Southern District of New

York, entitled Fair Housing Justice Center, Inc. v. Bruckner Tower, LLC et al., 1:19-cv-08622-DLC,

(the "*Action*") alleging that defendants Bruckner Tower, LLC ("*Bruckner Tower*"), Carnegie

Management Inc. (together with Bruckner Tower, "*Owner Defendants*"), Karl Fischer Architecture

PLLC ("*Karl Fischer*") and Fischer + Makooi Architects PLLC ("*Fischer + Makooi*", together with

Karl Fischer, the "*Architect Defendants*", and together with the Owner Defendants, the "*Defendants*")

discriminated on the basis of disability in the design and construction of a 130-unit multi-family

residential building complex known as the "Crescendo" and located at 25 Bruckner Boulevard, Bronx

County, New York (the "*Building*" ) in violation of the Federal Fair Housing Amendments Act of

1988 ("*FHAA*") Title VIII of the Civil Rights Act, 42 U.S.C. § 3601 *et seq.*; the New York State

Executive Law (the "*Executive Law*") § 290 *et seq.*; the New York State Civil Rights Law, § 40

("*CRL*") and the Administrative Code of the City of New York (the "*Administrative Code*") § 8-101 *et*

*seq.* (the FHAA, Executive Law, CRL and Administrative Code are hereinafter referred to as the

"*Human Rights Laws*");

**WHEREAS,** Plaintiff, Owner Defendants and Architect Defendants (collectively, the "**_Parties_**" and each individually, a "**_Party_**") have agreed to resolve their claims without the need for further litigation;

**WHEREAS**, the Defendants, by their attorneys, have consented to entry of this Consent Judgment without trial or adjudication of any issue of fact or law and to waive any appeal if the Consent Judgment ("**_Judgment_**") is entered as submitted by the Parties;

**WHEREAS**, Defendants, by entering into this Judgment, do not admit the allegations of the Complaint other than those facts deemed necessary to the jurisdiction of this Court;

**NOW THEREFORE**, without trial or adjudication of issue of fact or law, without this Judgment constituting evidence against Defendants, and upon consent of Defendants, the Court finds that there is good and sufficient cause to enter this Judgment, and that it is therefore ORDERED, ADJUDGED, AND DECREED:

**A.      Jurisdiction.**

1.      This Court has jurisdiction over the subject matter of the Action pursuant to 28 U.S.C. § 1331 and 1343, and 42 U.S.C. § 3613 as the Action involves federal questions regarding the deprivation of Plaintiff's rights under the FHAA. This Court has supplemental jurisdiction over Plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

2.      Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendants' alleged acts occurred in this judicial district and the Building is located in this judicial district.

3.      This Court retains jurisdiction over the subject matter of the Action and over the Parties for the purpose of resolving disputes arising under this Judgment, or effectuating or

enforcing compliance with this Judgment. Defendants may not challenge the terms of this Judgment or this Court's jurisdiction to enter and enforce this Judgment.

> **B.**    **General Injunction Against All Defendants**.

> 1.    Defendants, and each of their officers, employees, agents, successors and assigns, and all other persons in active concert or participation with them (i) are enjoined from discriminating on the basis of disability as prohibited by the Fair Housing Act, 42 U.S.C. § 3601, *et seq*., and the New York State Human Rights Laws, New York Executive Law § 296 *et seq*., the New York City Human Rights Law, New York City Administrative Code § 8-107 *et seq*.; (ii) have an affirmative duty not to discriminate under the Human Rights Laws and (iii) have an affirmative duty not to retaliate against any person because that person has made a complaint, testified, or participated in any manner in a proceeding to enforce the Human Rights Laws; and

> **C.**    **Financial Terms.**

> 1.    The Defendants will pay the total sum of Two Hundred Thousand ($200,000.00) dollars in compensation for all damages, attorneys' fees and costs related to claims brought by Plaintiff against the Defendants in the Action (the "***Judgment Amount***"). The Judgment Amount shall be paid via checks or money transfers, as follows:

> > a.    The Owner Defendants will pay        One Hundred and Twenty-Five Thousand ($125,000.00) Dollars; and

> > b.    The Architect Defendants will pay Seventy-Five Thousand ($75,000.00) Dollars.

> 2.    Each of the Defendants shall make their respective portion of the Judgment Amount payable to Fair Housing Justice Center, Inc. Each of the Defendants, within twenty-one (21) days after this Judgment is signed by Plaintiff and Defendants receipt of a W9 from Plaintiff's

attorney, shall deliver their respective portion of the Judgment Amount to Plaintiff at the address set forth in Paragraph G(1)(a) below, or in such other manner as is acceptable to Plaintiff.

        3.     The Judgment Amount does not include the cost of retrofits to individual dwelling units and common use areas of the Building. The Parties agree that Owner Defendants shall bear the costs of all the retrofits to the individual dwelling units and common use areas required by this Judgment.

        **D.**     **Owner Defendants' Specific Provisions.** Owner Defendants, and each of their officers, employees, agents, representatives, subsidiaries, successors and assigns, and all other persons in active concert or participation with them shall be bound by the below requirements for a period of three (3) years following the entry of this Judgment (the "***Owner Defendants' Term***").

        1.     **No Admission of Liability**. The Owner Defendants deny the allegations of wrongdoing and liability against them, and by entering into this Judgment do not intend to admit, and do not admit, the same.

        2.     **Remediation Directive.** Plaintiff alleges that certain features of the Building were designed and/or constructed in a manner that fails to adhere to the accessibility requirements of the Human Rights Laws. Without admitting liability, Owner Defendants agree to address the conditions alleged to be violations of the Human Rights Laws by performing modifications to the Building as set forth in **Appendix "A"** in a good and workmanlike manner (the "***Remediation Items***") and pursuant to the following deadlines:

        a.     As soon as reasonably possible, but no later than (i) one hundred eighty (180) days from the entry of this Judgment for the common use areas (the "***Common Use Area Remediation Date***") and (ii) three (3) years from the entry of this Judgment for the individual units (the "***Unit Remediation Date***"), unless a different date (*e.g.,* unit turnover, or forty-five (45) days of

request) is otherwise set forth in Appendix "A", Owner Defendants shall complete the Remediation Items. To the extent that any condition identified in Appendix "A" exists in a unit not inspected by Plaintiff, the same will be remediated pursuant to deadline in D.2.a.(ii) and in the same manner set forth in Appendix "A". If any of the Remediation Items are not timely completed due to acts beyond the control of Owner Defendants, then Owner Defendants must promptly notify Plaintiff of the same. Owner Defendants shall not be deemed to be in violation of the compliance dates contained herein as long as Owner Defendants make a good faith effort to effect implementation of the Remediation Items as soon as reasonably possible thereafter.

       b.    The Owner Defendants shall enter into a contract with an independent neutral inspector with expertise in the design and construction requirements of the FHAA and the New York City Building Codes and approved by the Plaintiff (the "***Neutral Inspector***"), to determine Owner Defendants' compliance with the remediation requirements of this Judgment. The terms of the contract between the Owner Defendants and the Neutral Inspector shall require the Neutral Inspector to conduct on-site inspections of all remediation performed pursuant to Appendix "A" of this Judgment. Owner Defendants and FHJC shall endeavor, in good faith, to agree on a Neutral Inspector for purposes of this Paragraph "2" within thirty (30) days of the entry of this Judgment. If during the Owner Defendants' Term, the Neutral Inspector is no longer available to serve in this capacity, the Owner Defendants will notify FHJC in writing and seek in good faith to obtain the FHJC's agreement to a replacement Neutral Inspector, which FHJC shall not unreasonably withhold such consent.

       c.    Within thirty (30) days following each of the Common Use Area Remediation Date and the Unit Remediation Date, or such later date provided for hereof, the Neutral Inspector shall conduct an inspection of the Building to ensure that the Remediation Items for, respectively, the common use area and the individual units have all been completed in compliance with

Appendix "A" in a good and workmanlike manner (each an "*Inspection*"). Owner Defendants shall provide Plaintiff with fourteen (14) days advance notice of each such Inspection so that Plaintiff and Plaintiff's expert may be present for the same. Within thirty (30) days of each Inspection, the Neutral Inspector shall issue a report of his findings (the "*Inspection Report*"), which Inspection Report shall detail (i) the common areas and units inspected (ii) whether each of the Remediation Items have been completed, (iii) any further work required to complete the Remediation Items, (iv) any deviation from Appendix "A", and (v) whether the Remediation Items have been performed in a manner consistent with good workman-like standards. The Inspection Report shall include: (a) the methodology used by Neutral Inspector, (b) a description of Neutral Inspector's findings for each Remediation Item, and (c) digital photographs supporting each finding.

        d.      If the Inspection Report indicates that not all of the required Remediation Items were completed in compliance with Appendix "A" in a good and workmanlike manner, Owner Defendants shall correct any deficiencies within ninety (90) days of the Neutral Inspector report specifying the same (the "*Correction Date*") and shall pay for another Inspection by Neutral Inspector within thirty (30) days of the Correction Date, with Plaintiff being provided no less than fourteen (14) days' notice of the same and the option to attend. This process shall continue until Neutral Inspector issues a report certifying that all Remediation Items have been completed in compliance with Appendix "A" in a good and workmanlike manner. Any expenses associated with the Neutral Inspector and all required inspections shall be paid by Owner Defendants.

        e.      Nothing in this Judgment shall be read to relieve the Owner Defendants of the obligation to schedule (re-)inspections and/or complete the Remediation Items even if such obligations extend beyond the duration of the Owner Defendants' Term.

        3.      **Notice of Remediation.** Within thirty (30) days of the entry of this Judgment,

Owner Defendants shall notify all existing residents of the Building that Owner Defendants are required to perform the Remediation Items within the Building by the Remediation Date (in the form annexed hereto as Appendix "B"). During the Owner Defendants' Term, this notice will be provided to prospective tenants simultaneous with any application for tenancy of the Building.

4.      **Judgment Distribution.** Within thirty (30) days of the entry of this Judgment, Owner Defendants shall provide all officers, directors, employees and agents whose duties, in whole or in part, involve or may involve (i) the development, design and/or construction of a Covered Multifamily Dwelling[1] or (ii) who work onsite at Covered Multifamily Dwellings or whose job relates to the sale or rental of, or supervision of services to residents at, Covered Multifamily Dwellings (a "***Covered Employee***") with a copy of this Judgment. Owner Defendants shall provide all newly hired Covered Employees with a copy of this Judgment within seven (7) days of the commencement of their employment.

5.      **Training Directive.** Within ninety (90) days of entry of this Judgment (the "***Initial Training***"), Owner Defendants' Covered Employees shall complete the following online training courses offered by the U.S. Department of Housing and Urban Development: i) The Design and Construction Requirements of the FHAA: Technical Overview Part 1; ii) The Design and Construction Requirements of the FHAA: Technical Overview Part 2; and iii) Reasonable Modifications and Reasonable Accommodations (the "***Training Programs***"). Owner Defendants shall provide Plaintiff with proof of completion within 30 days of completing the Initial Training. Within seven (7) days of the commencement of their employment all newly hired Covered Employees of Owner Defendants will complete the Training Programs ("***New Employee Trainings***"). Owner

---

[1] "***Covered Multifamily Dwelling***" means a building designed and constructed for first occupancy after March 13, 1991, with either (i) four or more dwelling units, and one or more elevator, or (ii) or ground floor units in buildings consisting of four or more units if such buildings do not have an elevator.

Defendants shall require that their Covered Employees review each of the Training Programs, annually thereafter, during the Owner Defendants' Term (the "***Annual Trainings***").

6. **Adoption of Policies.** Within thirty (30) days of the entry of this Judgment, Owner Defendants shall adopt the written Anti-Discrimination Policy, annexed hereto as <u>Appendix</u> <u>"C"</u>, along with a Reasonable Accommodation or Modification Policy and Request Form, annexed hereto as <u>Appendix "D"</u> (the Reasonable Accommodation or Modification Policy and Request Form together with the Anti-Discrimination Policy collectively referred to as the "***Policies***"). The Policies will be distributed to all Covered Employees, and to all residents of the Building within thirty (30) days of the entry of this Judgment. The Policies will be provided to all new tenants of the Building simultaneously with an executed lease agreement, and to all new Covered Employees within thirty (30) days of hiring.

7. **Covered Employee Certifications.** Within one-hundred and twenty (120) days of the entry of this Judgment, Owner Defendants shall provide Plaintiff with certifications from each Covered Employee confirming that they have (i) received a copy of the Judgment (by certification in the form annexed hereto as <u>Appendix "E"</u>), (ii) completed the Initial Training (by certification in the form annexed hereto as <u>Appendix "F"</u>), and (iii) received a copy of the Policies (by certification in the form annexed hereto as <u>Appendix "G"</u>). A certification in the form annexed as (i) <u>Appendix "E"</u> and <u>Appendix "G"</u> shall be completed by all new Covered Employees, and (ii) <u>Appendix "F"</u> shall be completed by all Covered Employees, and all such certifications shall be provided to Plaintiff within thirty (30) days of the completion of the Annual Trainings.

8. **Fair Housing Postings.** Within thirty (30) days of the entry of this Judgment, Owner Defendants shall (i) post and prominently display, at Owner Defendants' corporate and primary business offices and at each of its sales and rental offices for a Covered Multifamily Dwelling

and in the mailroom of the Building, a Housing and Urban Development (HUD) fair housing poster, HUD Form 928.1 (a copy of which is annexed hereto as <u>Appendix "H"</u>), no smaller than eleven (11) by fourteen (14) inches and complying with the other requirements set out in 24 CFR Part 110 indicating that all dwellings are available for rental on a non- discriminatory basis and (ii) include the fair housing logo and international symbol of accessibility in the forms annexed as <u>Appendix "I"</u> (not to scale), or the phrase "Equal Housing Opportunity", in a conspicuous location and/or manner in all newspaper, radio, television or Internet advertisements, brochures, or other promotional materials regarding the Building and on its corporate and Building websites and on all other marketing or advertising materials for multifamily dwellings.

9.      **Fair Housing Opportunities**. During the Owner Defendants' Term, the Owner Defendants shall provide information annually (four times during the duration of this Judgment) about available rental opportunities at the Building to New York City non-profit organizations serving person with disabilities, to be designated by Plaintiff, by sending a letter with brochures, links to websites, and other marketing information, along with a description of the Building's accessibility features and options for physical modifications. During the Owner Defendants' Term, Plaintiff will provide the Owner Defendants with a list of the names and addresses of such organizations within six (6) months following the entry of this Judgment, and annually thereafter. The Owner Defendants will provide a draft of the proposed letter to Plaintiff at least ninety (90) days prior to mailing it so that FHJC may provide comments to the Owner Defendants about the letter.

10.      **Fair Housing Compliance Officer**. Within thirty (30) days of the entry of this Judgment, Owner Defendants shall designate and maintain a "C" suite level employee to serve as the fair housing compliance officer for Owner Defendants. The compliance officer shall be responsible for

ensuring that any new officer or director, and any other Covered Employee hired during the Owner

Defendants' Term receives a copy of the Judgment and Policies and attends the Initial Training and

Annual Trainings. The compliance officer shall also serve as the Owner Defendants' point of contact

for FHJC during the Owner Defendants' Term.

11.     **Non-Discrimination in Other Design and Construction.**

a.      During the Owner Defendants' Term, Owner Defendants will retain, at

its own expense, an independent neutral consultant with expertise in the accessibility requirements of

the FHAA and New York City Building Code (the "***Neutral Peer Reviewer***") to conduct a peer review

of any new Covered Multifamily Dwellings and Covered Sites for which the Owner Defendants or

any of its subsidiaries or affiliated corporations or partnerships develops, owns, designs and/or

constructs.

b.      If during the Owner Defendants' Term, the designated Neutral Peer

Reviewer is no longer available to serve in this capacity, the Owner Defendants will notify FHJC in

writing and seek in good faith to obtain the FHJC's agreement to a new Neutral Peer Reviewer, and

FHJC's agreement shall not be unreasonably withheld.

c.      The Neutral Peer Reviewer will review, prior to the commencement of

construction of any Covered Multifamily Dwellings, the architectural, site engineering, or other

development plans for such Covered Multifamily Dwellings that the Owner Defendants and/or its

subsidiaries or affiliates own(s) and/or develop(s) during the Owner Defendants' Term. Within thirty

(30) days of receiving the documents the Neutral Peer Reviewer will prepare a report for each such

development that describes (i) the date(s) of the review; (ii) the street address of the development

reviewed; (iii) the documents reviewed; and (iv) a description of the Neutral Peer Reviewer's findings

with respect to compliance with the seven accessibility requirements specified in the Fair Housing

Act, 42 U.S.C. § 3604(f)(3)(C) and the applicable accessibility requirements of the New York City Building Code.

        d.     Within thirty (30) days of the issuance of a certificate of occupancy for each Covered Multifamily Dwelling, the Neutral Peer Reviewer will conduct a physical inspection of the development site and prepare a report for each such development that describes (i) the date(s) of the review; (ii) the street address of the development reviewed; (iii) the documents reviewed; and (iv) a description of the Neutral Peer Reviewer's findings with respect to compliance with the seven accessibility requirements specified in the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(C).

        e.     The Owner Defendants agree to remedy (or cause to be remedied) any compliance issues identified by the Neutral Peer Reviewer upon their inspection of a particular Covered Multifamily Dwelling. Upon resolution of such compliance issues, the Neutral Peer Reviewer shall certify in writing that the respective Covered Multifamily Dwelling is in compliance.

        f.     During the Owner Defendants' Term, the Owner Defendants will keep all documents, including emails, used by or given to the Neutral Peer Reviewer in connection with the compliance reporting duties. Upon receipt of written notice by FHJC, Owner Defendants will provide FHJC with copies of all relevant Neutral Peer Reviewer reports.

        12.    **Reporting and Recordkeeping**. During the Owner Defendants' Term, the Owner Defendants shall:

        a.     provide FHJC, upon fourteen (14) days advance notice, with a list of street addresses for each residential building covered by the FHAA where the Owner Defendants have, during the past year, conducted or contracted to conduct any design or construction work. If no such building exists, the Owner Defendants shall provide FHJC a statement saying there are no such buildings;

b.      maintain drawings, renderings, blueprints, plans, and other design and construction records concerning each residential building covered by the FHAA where the Owner Defendants have, during the past year, conducted or contracted to conduct any design or construction work. The Owner Defendants shall provide such records to FHJC for inspection once per year upon fourteen (14) days advance request by FHJC;

c.      advise FHJC in writing within fifteen (15) days of receipt of any written administrative or legal fair housing complaint regarding any Covered Multifamily Dwelling owned, managed, and/or designed or constructed by it, or against any employees or agents of the Owner Defendants working at or for any such property, alleging discrimination on the basis of disability in housing under federal law. Upon reasonable notice the Owner Defendants shall also provide FHJC all information it may request concerning any such complaint. The Owner Defendants shall also advise FHJC, in writing, within fifteen (15) days of the resolution of any complaint. The Owner Defendants shall not retaliate against or in any respect adversely affect any person that files a fair housing complaint against the Owner Defendants or any of their subsidiaries or affiliates; and

d.      preserve all records related to this Judgment and for any other Covered Multifamily Dwellings designed, constructed, owned, operated, or acquired by it during the duration of this Judgment. Upon reasonable notice to the Owner Defendants, representatives of FHJC shall be permitted to inspect and copy any records of the Owner Defendants or inspect any developments or residential units under the Owner Defendants' control bearing on compliance with this Judgment at any and all reasonable times.

13.     **Transfer of Interest in Building.** The sale or transfer of ownership, in whole or in part, of any of the Owner Defendants' or any other entity's or person's interest(s) in the Building shall not affect the Owner Defendants' continuing obligation to retrofit, and/or conduct or allow

inspections or surveys of, the Building, as specified in this Judgment, unless the Owner Defendants have obtained in writing, as a condition of sale or transfer, the purchaser's or transferee's commitment to assume such obligations, so that the purchaser or transferee will be bound by the terms of this Judgment to make retrofits and allow or conduct inspections or surveys as set forth in this Judgment, and will be subject to the jurisdiction of this Court. Should an owner of the Building decide to sell or transfer any ownership of the Building, in whole or in part, or any portion thereof, prior to the completion of the retrofits specified in this Judgment, the owner of the Building will at least thirty (30) days prior to completion of the sale or transfer, unless the contract of sale shall provide for a shorter period between contract and closing, but at least fifteen (15) days prior to completion of the sale or transfer: (a) provide each prospective buyer with a copy of this Judgment and written notice that the Building is subject to this Judgment, including specifically the Owner Defendants' obligations to either (i) complete required retrofit work and allow inspections, or (ii) assign such obligations to the purchaser or transferee by obtaining the purchaser or transferee's commitment to be bound by this Judgment, subject to the jurisdiction of this Court; and (b) provide to FHJC, by email and either by Overnight Mail or By Hand Delivery, written notice of the owner's intent to sell or transfer ownership, along with a copy of the notice sent to each buyer, and each buyer's name, address and telephone number.

E.     **Fischer + Makooi Specific Provisions.** Fischer + Makooi, and its officers, agents, successors and assigns, and all other persons in active concert or participation with them shall be bound by the below requirements for a period of three (3) years following the entry of this Judgment (the "***Architect Term***"):

1.     **No Admission of Liability**. The Architect Defendants deny the allegations of wrongdoing and liability against them, and by making this Judgment do not intend to admit, and do not admit, the same.

2.      **Website Logo**. Within thirty (30) days of entry of this Judgment, during the Architect Term, Fischer + Makooi shall include the equal opportunity housing logo in the form annexed as <u>Appendix " I</u>" (not to scale), or the phrase "Equal Housing Opportunity", in a conspicuous location and/or manner on the landing page of its website, fmarchitect.com.

3.      **Fair Housing Training**. Within 90 days of entry of this Judgment, Fariba Makooi of Fischer + Makooi shall complete the following online training courses offered by the U.S. Department of Housing and Urban Development: i) The Design and Construction Requirements of the FHAA: Technical Overview Part 1; ii) The Design and Construction Requirements of the FHAA: Technical Overview Part 2; iii) Reasonable Modifications and Reasonable Accommodations. Fischer + Makooi shall provide Plaintiff with proof of completion within 30 days of completing all training courses.

4.      During the Architect Term, on future projects involving Covered Multifamily Dwellings with thirty five (35) or more units in Plaintiff's service area (the following Counties in the State of New York: New York, Bronx, Queens, Kings, Richmond, Nassau, Suffolk, Dutchess, Orange, Putnam and Rockland), Fischer + Makooi or its clients shall retain an accessibility consultant, with at least 10 years of plan review experience, (the "***Architects' Consultant***") to review approximately 75% Construction Documents and opine on compliance with the FHAA and the applicable accessibility requirements the local building code. The Architects' Consultant shall provide Fischer + Makooi with a written report proposing solutions for any non-compliant conditions. Fischer + Makooi agrees to implement the solutions unless it has a good faith disagreement with the code interpretation or proposed solution, in which case it will engage in a dialogue about the specific issue. On an annual basis, Fischer + Makooi will provide a written statement to Plaintiff confirming the number of projects that Architects' Consultant reviewed. Fischer + Makooi does not need to

provide the reports to Plaintiff or specifically identify the projects, other than disclosing the number of stories and units.

      **F.**      **Release**.

      1.      Except for the right to enforce the terms of this Judgment, and in exchange for adequate consideration as set forth herein, Plaintiff fully and forever releases, acquits, and discharges with prejudice, subject to the terms of this Judgment, Defendants and, where applicable, each of their respective, affiliates, joint venturers, joint venture partners, direct and indirect parent companies, direct and indirect subsidiary companies, beneficial owners or indirect beneficial owners, equity holders or indirect equity holders, lenders, insurers and reinsurers, principals, partners, directors, employees, agents, representatives, officers, heirs, assigns, subsidiaries, successors in interest, attorneys and insurers, from any and all liability, claims, or rights of action, of any kind or nature whatsoever, that arise from or relate in any way to the allegations set forth or described in the Complaint in this action, whether known or unknown, including all claims for reasonable attorneys' fees and costs (hereinafter, the "***Released Claims***"); provided however, that Released Claims do not include any claims to enforce any provision of this Judgment.

      2.      Each Defendant fully and forever releases, acquits, and forever discharges with prejudice, subject to the terms of this Judgment, Plaintiff and, where applicable, its affiliates, joint venturers, joint venture partners, direct and indirect parent companies, direct and indirect subsidiary companies, beneficial owners or indirect beneficial owners, equity holders or indirect equity holders, lenders, insurers and reinsurers, principals, partners, directors, employees, agents, representatives, officers, heirs, assigns, subsidiaries, successors in interest, attorneys and insurers from the Released Claims, as defined in the preceding paragraph hereof; provided however, that Released Claims do not include any claims to enforce any provision of this Judgment.

3.      The Owner Defendants and the Architect Defendants fully and forever release, acquit, and forever discharge with prejudice each other and, where applicable, their affiliates, joint venturers, joint venture partners, direct and indirect parent companies, direct and indirect subsidiary companies, beneficial owners or indirect beneficial owners, equity holders or indirect equity holders, lenders, insurers and reinsurers, principals, partners, directors, employees, agents, representatives, officers, heirs, assigns, subsidiaries, successors in interest, attorneys and insurers from the Released Claims, as defined in the preceding paragraph hereof and also including the release of any right to recovery in arbitration concerning the Building.

G.      **Other Terms**.

1.      Unless otherwise set forth herein, all notices under or relating to this Judgment shall be in writing and shall be addressed to the appropriate Party at the address specified below or such other address as may be specified by such Party, in writing in accordance with this Section. Notices shall be deemed given and received (a) when personally delivered, or delivered by same-day courier; or (b) on the third business day after mailing by registered or certified mail, postage prepaid, return receipt requested; or (c) upon delivery when sent by prepaid overnight express delivery service (e.g., FedEx, UPS); or (d) upon the receipt by the sending Party of written confirmation from the receiving Party when sent by email; *provided*, *however*, that an automated email confirmation of delivery or read receipt shall not constitute such confirmation.

a.      If to FHJC:

Fair Housing Justice Center, Executive Director
30-30 Northern Blvd. Suite 302
Long Island City, NY 11101
fhjc@fairhousingjustice.org
compliancemonitoring@fairhousingjustice.org

b.       If to Owner Defendants
                Carnegie Management Inc.
                c/o Motty Spitzer
                545 Broadway, 4th Floor
                Brooklyn, New York 11206
                motty@mydevelopersinc.com

                With a copy to:

                Rosenberg & Estis, P.C.
                Attn: Cori A. Rosen, Esq.
                733 Third Avenue
                New York, New York 10017
                crosen@rosenbergestis.com

c.       If to Architect Defendants
                Fariba Makooi
                Fischer + Makooi Architects, PLLC
                259 West 30th Street, Suite 401
                212-219-9733
                fariba@fmarchitect.com

                With a copy to:

                MILBER MAKRIS PLOUSADIS & SEIDEN, LLP
                Attn: Jeffrey Fox, Esq.
                100 Manhattanville Road, Suite 4E20
                Purchase, New York 10577
                jfox@milbermakris.com

2.     This Judgment will be deemed to have been jointly drafted, and no provision herein will be interpreted or construed for or against any Party because such Party drafted or requested such provision or this Judgment as a whole.

3.     The headings contained herein are for convenience of reference only and are not intended to define, limit, expand or describe the scope or intent of any provision of this Judgment.

4.     This Judgment contains all the terms and conditions agreed upon by the Parties, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Judgment regarding the subject matter of the instant proceeding will be deemed to exist, to bind the Parties hereto, or to vary the terms and conditions contained herein.

5.      The Effective Date of this Judgment shall be the date on which the Judgment has been entered by the Court.

6.      Any material modification to this Judgment must be in writing, signed by the Parties, and shall be effective upon approval by the Court. Any non-material modification to this Judgment also must be in writing and shall be effective when signed by the Parties and filed with the Court.

7.      Except as set forth herein, each Party shall bear its own fees, expenses and costs related to the Action.

8.      The Parties to this Judgment expressly represent and warrant that they have full legal capacity to enter into this Judgment, that they have carefully read and fully understand this Judgment, that they have had the opportunity to review this Judgment with their attorneys, and that they have executed this Judgment voluntarily, without duress, coercion, or undue influence.

9.      This Judgment may be executed in any number of counterparts and each such counterpart will be deemed to be an original. For purposes of executing this Judgment, a document signed and transmitted by facsimile or email will be treated as an original document and have the same binding legal effect as an original signature on an original document.

*[The Remainder of This Page is Intentionally Left Blank, Signatures Are on the Page Immediately Following]*

So ordered. The Clerk of Court shall close this case.

Denise Cote
3/12/24

It is SO ORDERED this ____ day of March, 2024

 

                                                _____
HON. DENISE L. COTE
UNITED STATES DISTRICT JUDGE

*For Plaintiff:*

       **PARKER HANSKI LLC**

By: _____

      Robert G. Hanski, Esq.
      40 Worth Street, Suite 602
      New York, NY 10013
      (212) 248-7400
      *Attorneys for Plaintiff*

By: _____

      Elizabeth Grossman
      Executive Director/General Counsel
      Fair Housing Justice Center Inc.

*For Defendants:**

**ROSENBERG & ESTIS, P.C.**

By: _____

      Cori A. Rosen, Esq.
      733 Third Avenue
      New York, New York 10017
      (212) 867-6000
      *Attorneys for Defendants Bruckner Tower,*
      *LLC, Carnegie Management Inc.*

**DERFNER & GILLETT, LLP**

By: _____

      Donald A. Derfner Esq.
      David P. Gillett, Esq.
      767 Third Avenue
      New York, New York 10017
      (212) 697-8100
      *Attorneys for Defendants Bruckner Tower,*
      *LLC, Carnegie Management Inc.*

By: _____

      Bruckner Tower, LLC

By: _____

      Carnegie Management Inc.

It is SO ORDERED this _____ day of March, 2024

_____

HON. DENISE L. COTE
UNITED STATES DISTRICT JUDGE

*For Plaintiff:*

**PARKER HANSKI LLC**

By: _____
    Robert G. Hanski, Esq.
    40 Worth Street, Suite 602
    New York, NY 10013
    (212) 248-7400
    *Attorneys for Plaintiff*

By: _____
    Elizabeth Grossman
    Executive Director/General Counsel
    Fair Housing Justice Center Inc.

*For Defendants:**

**ROSENBERG & ESTIS, P.C.**

By: _____
    Cori A. Rosen, Esq.
    733 Third Avenue
    New York, New York 10017
    (212) 867-6000
    *Attorneys for Defendants Bruckner Tower,*
    *LLC, Carnegie Management Inc.*

**DERFNER & GILLETT, LLP**

By: _____
    Donald A. Derfner Esq.
    David P. Gillett, Esq.
    767 Third Avenue
    New York, New York 10017
    (212) 697-8100
    *Attorneys for Defendants Bruckner Tower,*
    *LLC, Carnegie Management Inc.*

By: *Marty Spitzer*
    _____

    Bruckner Tower, LLC

By: *Marty Spitzer*
    _____

    Carnegie Management Inc.

It is SO ORDERED this _____ day of March, 2024

_____
HON. DENISE L. COTE
UNITED STATES DISTRICT JUDGE

*For Plaintiff:*                                    *For Defendants:* *

**PARKER HANSKI LLC**                    **ROSENBERG & ESTIS, P.C.**

By: _____          By: _____
    Robert G. Hanski, Esq.                       Cori A. Rosen, Esq.
    40 Worth Street, Suite 602                   733 Third Avenue
    New York, NY 10013                           New York, New York 10017
    (212) 248-7400                               (212) 867-6000
    *Attorneys for Plaintiff*                    *Attorneys for Defendants Bruckner Tower,*
                                                 *LLC, Carnegie Management Inc.*

By: _____          **DERFNER & GILLETT, LLP**
    Elizabeth Grossman
    Executive Director/General Counsel    By: _____
    Fair Housing Justice Center Inc.             Donald A. Derfner Esq.
                                                 David P. Gillett, Esq.
                                                 767 Third Avenue
                                                 New York, New York 10017
                                                 (212) 697-8100
                                                 *Attorneys for Defendants Bruckner Tower,*
                                                 *LLC, Carnegie Management Inc.*

                                          By: _____

                                                 Bruckner Tower, LLC

                                          By: _____

                                                 Carnegie Management Inc.

**MILBER MAKRIS PLOUSADIS & SEIDEN, LLP**

By: _____

      Jeffrey Fox, Esq.
      100 Manhattanville Road, Suite 4E20
      Purchase, New York 10577
      (914) 231-8014
      *Attorneys for Defendants Karl Fischer*
      *Architecture PLLC and Fischer + Makooi*
      *Architects PLLC*

By: _____

      Fariba Makooi
      Fischer + Makooi Architects PLLC

20

## APPENDIX A - REMEDIATION ITEMS

| Condition | Pltf. Ref. Nos.[2] | Alleged Condition | Remediation Item[3] |
|---|---|---|---|
| 1. Kitchen Countertops | 1, 15, 31, 43, 56, 85, 94, 114, 123, 132, 143, 153, 176, 186 | 36" - 36 ½" Above the Finished Floor ("AFF") | 30" minimum wide work surface has been or will be provided in all units with this condition. Owner Defendants will require that tenants keep the provided remedial work surface in the unit, and that the same be present upon vacancy. Owner Defendants will replace any removed/destroyed work surface upon vacancy prior to offering a unit for lease.<br>Alternatively, upon the reasonable modification request of a tenant or prospective tenant, Owner Defendants will provide a permanently affixed 30" minimum wide work surface. |
| 2. Kitchen Sink Height | 2, 16, 32, 44, 57, 86, 95, 115, 124, 133, 144, 154, 176, 177, 187 | 36" - 36 ½" AFF | If the sink and surrounding counter are not adjustable or replaceable at 28" and 36" (710 mm and 915 mm), measured AFF to the top of the counter surface or sink rim requirements, subject to a ½" conventional building industry tolerance, the same will be replaced upon the earlier of a tenant request, vacancy or within three (3) years of the entry of the Judgment. All sinks will be adjusted/replaced upon a reasonable modification request of a tenant or prospective tenant. |
| 3. Kitchen Storage | 3, 17, 33, 45, 58, 87, 96, 116, 125, 134, 145, 155, 178, 188 | 60" - 61" AFF | Adjustable shelf 48" maximum AFF, subject to a ½" conventional building industry tolerance, has been or will be provided upon the earlier of a tenant request, vacancy or within three (3) years of the entry of the Judgment. |
| 4. Kitchen Sink Depth | 189 | 11" Depth | Kitchen sink to be replaced to a 6 ½" maximum depth upon the earlier of a tenant request, vacancy or within three (3) years of the entry of the Judgment. |
| 5. Kitchen Sink Approach | 46 | No forward approach | Removable base cabinet has been or will be provided upon the earlier of a tenant request, vacancy or within three (3) years of the entry of the Judgment. |
| 6. Kitchen Clearance | 55, 175 | 37" - 39" distance between appliances and opposing countertops | Distance between appliances and opposing countertops has been or will be provided in applicable kitchen types (K2 and K4), subject to a ½" conventional building industry tolerance, upon the earlier of a tenant request, vacancy or within three (3) years of the entry of the Judgment. Additional clearance will be provided in all units upon a tenant's request for a reasonable modification. |

[2] Pltf Ref. Nos shall refer to the reference numbers in the expert report of Ken Schoonover dated December 7, 2022.
[3] For all Remediation Items, ½" conventional building industry tolerance will be applied to account for field conditions.

RE\26098\0001\5424639v1

| Condition | Pltf. Ref. Nos.[2] | Alleged Condition | Remediation Item[3] |
|---|---|---|---|
| 7. Kitchen Electrical Outlets | 146 | 48 ½" AFF Two outlets do not serve the same countertop area | Outlets to be relocated to 46" AFF, subject to a ½" conventional building industry tolerance, for a side reach over obstruction upon the earlier of a tenant request, vacancy or within three (3) years of the entry of the Judgment. |
| 8. Bathtub Controls | 4, 20, 36, 50, 70, 90, 100, 119, 128, 137, 150, 158, 182, 193 | Controls centered on the control wall | Bathtub enclosure to be removed upon the reasonable modification request of a tenant or prospective tenant. |
| 9. Bathtub/ Shower Enclosures | 5, 7, 21, 26, 37, 51, 63, 71, 74, 91, 101, 110, 120, 129, 138, 151, 159, 164, 183, 194, 198 | Tub/Shower enclosure obstructs access to controls | Bathtub/shower enclosure to be removed upon the reasonable modification request of a tenant or prospective tenant. |
| 10. Fixed Shower Head | 6, 8, 22, 27, 38, 52, 64, 72, 75, 92, 102, 111, 121, 130, 139, 152, 160, 165, 184, 195, 199 | Fixed Shower Head | Handheld shower head spray unit on a 60" minimum long hose, to be provided upon the reasonable modification request of a tenant or prospective tenant, as permitted by the 2014 New York City Building Code. |

RE\26098\0001\5424639v1

| Condition | Pltf. Ref. Nos.[2] | Alleged Condition | Remediation Item[3] |
|---|---|---|---|
| 11. Lavatory Countertop | 9, 18, 34, 48, 61, 68, 77, 88, 98, 107, 117, 126, 135, 148, 156, 167, 180, 191, 201 | 34 ½" - 35" AFF | All lavatory countertops in excess of 34 ½" AFF will be replaced upon the earlier of a tenant request, vacancy or within three (3) years of the entry of the Judgment. |
| 12. Medicine Cabinet Storage | 19, 24, 35, 49, 62.1, 69, 79, 89, 99, 109, 118, 127, 136, 149, 157, 169, 181, 192, 203 | 47" - 54" AFF | Alternate shelf located 44" AFF, subject to a ½" conventional building industry tolerance, has been or shall be provided upon the earlier of a tenant request, vacancy or within three (3) years of the entry of the Judgment. |
| 13. Mirror | 62, 78, 108, 168, 202 | 47" - 54" AFF | Adjustable height shaving mirror that can be lowered to 40" AFF has been or shall be provided in all units where all bathroom mirrors are in excess of 40 ½" AFF, upon the earlier of a tenant request, vacancy or within three (3) years of the entry of the Judgment. Upon the reasonable modification request of a tenant or prospective tenant, additional full length mirrors will be provided in any bathroom. |
| 14. Lavatory Centerline to Adjacent to Shower | 60, 76, 106, 166, 200 | Centerline is 18" - 21 5/8" from adjacent shower | Removable base cabinet has been or will be provided upon the earlier of a tenant request, vacancy or within three (3) years of the entry of the Judgment. |
| 15. Toilet - Side Grab Bar | 25, 65.1, 73, 104 | Side wall between 18 ½" and 27 ¾" | Swing down grab bars will be installed as an alternative to side wall grab bar upon the reasonable modification request of a tenant or prospective tenant. |

RE\26098\0001\5424639v1

| Condition | Pltf. Ref. Nos.[2] | Alleged Condition | Remediation Item[3] |
|---|---|---|---|
| 16. Toilet Centerline vs side wall | 65, 103, 112, 122, 140, 161, 170, 196, 204 | 16" - 24 ½" from side wall | For all units with a toilet less than 16" from the side wall, the centerline of the toilet will be relocated upon the earlier of a tenant request, vacancy or within three (3) years of the entry of the Judgment. Where the toilet centerline is in excess of 18 from the side wall, a swing down grab bar will be provided upon the reasonable modification request of a tenant or prospective tenant. |
| 17. Lavatory Centerline to wall (w) and toilet (t) | 66, 81, 113, 141, 162, 171, 197, 205 | 25 ¾" - 30 ½" from centerline of lavatory to wall<br><br>9 ¾" - 13 ¼" from centerline of toilet to lavatory | Removable base cabinet has been or will be provided upon the earlier of a tenant request, vacancy or within three (3) years of the entry of the Judgment. |
| 18. Door: Pull-Side Maneuvering Clearance, toilet obstruction on latch side | 23, 41, 47, 59, 67, 97, 147, 163, 179, 190 | 0" - 15 3/8" on latch side | Door will be rehung to swing outward upon the reasonable modification request of a tenant or prospective tenant. |
| 19. Unit entrance door - threshold | 10, 13, 84 | 9/16" high on the corridor side, no bevel | All thresholds that fail to measure at ¾" (19 mm) maximum height with beveled edge on each side at a maximum slope of 1:2 for the height exceeding 1/4 inch, have been or will be provided upon the earlier of a tenant request, vacancy or within three (3) years of the entry of the Judgment. |
| 20. Balcony door threshold - interior side | 12, 28, 29, 40, 172, 206, 207 | 1 1/6" to 1 1/4" high, noncompliant bevel | Wooden thresholds to mitigate difference between unit and patio have been or will be provided upon the earlier of a tenant request, vacancy or within three (3) years of the entry of the Judgment. |
| 21. Pull Side Maneuvering Clearance, Latch side, Interior doors (other than bath) | 41, 42, 83, 173 | 3 ½" - 16 ½" latch side clearance | Door will be rehung to swing outward upon the reasonable modification request of a tenant or prospective tenant. |

4

| Condition | Pltf. Ref. Nos.[2] | Alleged Condition | Remediation Item[3] |
|---|---|---|---|
| 22. Maneuvering Clearance, perpendicular to Door | 54, 82 | 33" - 41" pull side | Depth of closets will be reduced to no greater than 24 ½" to correct maneuvering clearance issues. |
| 23. Hallway width | 30 | 35 ¼" to 35 ¾" wide | Hallway widths less than 35 ½" have been or will be corrected upon the earlier of a tenant request, vacancy, or within three (3) years of the entry of the Judgement. |
| 24. Handrails at entrance to 280 East 134th & 2nd Fl. Terrace /Lounge | 211, 261 | Handrails only present on one side | Handrails complying with the requirements of items 25 and 26 hereof to be installed on other side of stairwell within six (6) months of entry of the Judgment. |
| 25. Handrails at entrance to 280 East 134th and 25 Bruckner | 212, 243 | 2" square shape | Handrails with 1 ¼" to 1½" max width of gripping surface will be provided within six (6) months of entry of the Judgment. |
| 26. Handrails at entrance to 280 East 134th and 25 Bruckner | 213, 244, 245 | 280 East 134: 4 ½" at bottom 5 ½" at top. 25 Bruckner: *Left:* Extension, 3 ½" at bottom, 6" at top. *Right:* Extension 4 ½" at bottom, 5/1" at top. | Handrails to be replaced so that they extend 12" minimum beyond the top riser and 12" minimum plus the width of one tread beyond the bottom riser within six (6) months of entry of the Judgment. |
| 27. 280 East 134th Street Entrance - Call button panel | 214 | No accessible route to the panel. Call button panel is located at the top of the steps at the inaccessible entrance doors. | Call button panel has been or will be relocated to an accessible location upon the earlier of a tenant request for a reasonable modification, or within six (6) months of the entry of the Judgement. |

RE\26098\0001\5424639v1

| Condition | Pltf. Ref. Nos.[2] | Alleged Condition | Remediation Item[3] |
|---|---|---|---|
| 28.  Protruding Light Fixtures | 215, 267, 269, 271, 273" | 63" - 68 ½" AFF | Cane detection to be provided within six(6) months of the entry of the Judgment. |
| 29.  280 East 134th Street Entrance - Door - lobby to hallway | 216 | Door does not open to 90 degrees. | Door has been or will be adjusted to open to a 90-degree angle upon the earlier of a tenant request, or within six (6) months of the entry of the Judgement. |
| 30.  280 East 134th Street Entrance - Mailboxes | 217, 246 | Top four rows at 65", 61 1/2", 58" and 54 1/2" AFF | Five percent of the total mailboxes, but no less than one of each type have been or shall be at a height of 54" maximum AFF for a side reach, and 48" maximum AFF with a forward reach, subject to a ½" conventional building industry tolerance, within six (6) months of the entry of the Judgment. |
| 31.  280 East 134th and 25 Bruckner - Entry Door Opening Force | 218, 224, 225, 227, 229, 248, 259 | Opening force 6 lbs. - 12 lbs. | Door has been or will be adjusted to open to a 5 lbs. max opening force, upon the earlier of a tenant request, or within six (6) months of the entry of the Judgement. |
| 32.  Children's Playroom, Headroom clearance | 219 | 58" AFF sloping up to less than 80" AFF at approximately 23" from the wall. FHAG Req. 2; NYC/ANSI 4.4.1 FHAG Req. 2; NYC 1101.2, ANSI 307.2 | Cane detection has been or will be provided for cane detection within six (6) months of the date of a Judgment. |
| 33.  280 East 134th and 25 Bruckner - Door Closing Speeds. | 220, 230, 237, 252 | Closing speed approximately 1.5 seconds. | Door has been or will be adjusted to a closing speed of 3 sec. min. from 90 degrees open to 12 degrees open, within six (6) months of the entry of the Judgment. |

6

| Condition | Pltf. Ref. Nos.[2] | Alleged Condition | Remediation Item[3] |
|---|---|---|---|
| 34. 280 East 134th and 25 Bruckner - Grab Bar Clearance. | 222, 223, 233, 234, 240, 241 | 1 ¾" - 1 7/8" from the wall. | Grab bar has been or will be adjusted to a 1 ½" clearance from the wall within six (6) months of the entry of the Judgment. |
| 35. 280 East 134th and 25 Bruckner - Noncompliant Thresholds. | 226, 253,263, 266, 268, 270, 272 | 3/4" - 1" high on interior side ½" - 11/16" high on exterior side noncompliant bevel. | Thresholds falling outside of the ¾" safe harbor deviation have been or will be corrected within three (3) years of the entry of the Judgment. |
| 36. 280 East 134th and 25 Bruckner - Pull Side Clearance for Doors. | 228, 251, 262 | 1 ¾". | 18" minimum pull side clearance has been or will be provided within six (6) months of the entry of the Judgment. |
| 37. Men's and Women's roll in shower maneuvering clearance | 231, 238 | Women's: 30" deep by 57 1/2" wide Men's: 30" deep by 57" wide. | Showers have been or will be altered to comply with 30" by 60" requirement, subject to a ½" conventional building industry tolerance, within six (6) months of the entry of the Judgment. |
| 38. Sauna and Pool Area - Women's and Men's toilet room, Roll-in shower, shower head. | 232, 239 | No shower spray unit. | Shower spray unit with a 60" min. long hose has been or will be provided within six (6) months of the entry of the Judgment. |
| 39. Sauna and Pool Area - Women's toilet room, toilet flush controls. | 236 | Flush control mounted on the narrow side of the toilet clearance. | Flush controls mounted on the wide side of the toilet clearance have been or will be provided within six (6) months of the entry of the Judgment. |

7

| Condition | Pltf. Ref. Nos.[2] | Alleged Condition | Remediation Item[3] |
|---|---|---|---|
| 40. 25 Bruckner Boulevard - Building Entrance. | 242 | No accessible route from the public street. There are eight steps in the route from the public sidewalk to the building entrance. | A lift will be installed within one (1) year of the entry of the Judgement. |
| 41. Mailbox area - shelving. | 247 | No accessible route to the shelves. | Accessible shelf satisfying the 2018 IBC requirement has been or will be provided within three (3) years of the entry of the Judgment. |
| 42. Parking Garage Overhead Clearance | 249 | Overhead clearance of accessible parking space is less than 87 ½" AFF. | 97 ½" overhead clearance AFF to be provided at accessible parking space within three (3) years of the entry of the Judgment. |
| 43. Parking Garage - Accessible Parking Space #59. | 250 | Access aisle is obstructed by a column; effective aisle width is 4". | Min. number of accessible parking spaces have been or will be provided within six (6) months of the entry of the Judgment. |
| 44. Accessible Seating. | 254, 260, 264 | Counter seating 39" - 41" AFF. | Accessible seating between 28" to 34" maximum AFF has been or will be provided at reference 260, subject to a ½" conventional building industry tolerance, within six (6) months of the entry of the Judgment. |
| 45. Laundry, 1st Floor - VTM Machine. | 258 | Clear floor space at the VTM machine controls is obstructed by a dryer. | Relocate VTM machine or dryer to achieve adequate clear floor space within six (6) months of the entry of the Judgment. |
| 46. Lounge Room - 2nd Floor Television. | 265 | Protrudes 12" at 57" AFF. | Television has been or will be relocated so that it protrudes less than 4" into circulation path within six (6) months of the entry of the Judgment. |
| 47. Trash Rooms, Chute Hardware. | 274 | Requires twisting of the wrist to operate. | Alternative accessible location for residential trash will be provided on each floor of the Building within six (6) months of the entry of the Judgment. |

RE\26098\0001\5424639v1

| Condition | Pltf. Ref. Nos.[2] | Alleged Condition | Remediation Item[3] |
|---|---|---|---|
| 48.  Trash Rooms, Entry Door Thresholds. | 275, 276, 277, 278 | 3/8" - 1" high, noncompliant, or missing bevel. | Alternative accessible location for residential trash will be provided on each floor of the Building within six (6) months of the entry of the Judgment. |

9

## APPENDIX B

To Our Residents and Prospective Residents:

Bruckner Tower LLC and Carnegie Management Inc. are dedicated to the principle of equal housing opportunity. The federal Fair Housing Act requires that the public and common use areas and apartments in newer apartment communities have certain features of physical accessibility for people with disabilities. In conjunction with this dedication, ownership is undertaking modifications to the public and common use areas, as well as the apartments, of the building known as the Crescendo and located at 25 Bruckner Boulevard, Bronx New York (the "**Building**") to include accessibility features for persons with disabilities.

Within the next three (3) years, we will be undertaking a program of retrofits to the public and common use areas to make them more accessible to persons with disabilities. A list of the retrofits we will be undertaking is available at the leasing office.

Should modifications to your apartment also be required, a representative will contact you to review those modifications and to discuss a time frame within which those modifications may be made. We do not anticipate that current residents will have to be relocated during the term of their tenancy or that prospective residents will have their move-in dates delayed because of the retrofits we will be undertaking.

Should you have questions regarding this letter, please contact the management office at [_____].

Sincerely,
The Crescendo

RE\26098\0001\5424639v1

**APPENDIX C.**

**ANTI-DISCRIMINATION POLICY**

As part of our continuing effort to ensure compliance with federal, state, and local anti-discrimination laws, we would like to take this opportunity to remind all employees, of this company and all persons associated with it of our policies regarding discrimination. It is important for all employees to review his or her own actions in light of these requirements and for everyone to keep in mind the importance of treating all persons equally. It is the policy and practice of Bruckner Tower LLC and Carnegie Management Inc. not to engage in or assist the efforts of others to engage in housing discrimination. Consistent with that policy, we remind you that the anti-discrimination laws of the United States, New York State, and local laws are quite specific in the area of housing, and in conformance with those laws, you must not engage in any of the following conduct during the course of your work for this company:

- Refuse to show, rent, sell, negotiate for the rental or sale of, or otherwise make unavailable or deny, housing to any person because of their race, color, national origin, religion, sex, familial status, disability, age, marital status, military status, sexual orientation, gender identity, source of income, immigration/citizenship status, domestic partnership status, lawful occupation, height, weight, and all characteristics protected by local, state, and federal fair housing laws (each a "**prohibited characteristic**");

- Discriminate against any person in the terms, conditions or privileges of a rental or sale or in the provision of services or facilities in connection therewith because of a prohibited characteristic;

- Make any verbal or written statement with respect to the rental or sale of housing

1

that indicates any preference, limitation or discrimination concerning a prohibited characteristic, or any statement indicating an intention to make any such preference, limitation, or discrimination;

- Represent to any person because of a prohibited characteristic that any dwelling is not available for inspection or rental or sale when such dwelling is in fact so available; and

- Direct or steer any individual toward a particular building, neighborhood, or vacancy because of a prohibited basis.

It is important to understand that any action you take because of race, color, national origin, religion, sex, familial status, disability, age, marital status, military status, sexual orientation, gender identity, source of income, immigration/citizenship status, domestic partnership status, lawful occupation, height, weight, and all characteristics protected by local, state, and federal fair housing laws that has the effect of making housing unavailable to such persons protected under these laws constitutes a violation of federal, state, and local laws. We are firmly committed to the goal of fair housing. You should understand that any violation of this Anti-Discrimination Policy will lead to discipline, up to and including discharge.

RE\26098\0001\5424639v1

**APPENDIX D**

**REASONABLE ACCOMMODATION OR MODIFICATION POLICY
AND REQUEST FORM**

The building known as the "Crescendo" and located at 25 Bruckner Boulevard, Bronx New York (the "**Building**") is committed to providing an equal housing opportunity. As part of this commitment, the Building has modified its rules policies, practices, and services to meet the needs of individuals with disabilities upon request if the accommodation requested is reasonable and necessary to allow the individual to fully use and enjoy residing in the Building. The Building will also permit reasonable modifications the Building, inclusive of the dwelling units therein, if such modifications may be necessary to afford a disabled resident full enjoyment of the same.

It is our policy to reject reasonable accommodation or modification requests only when they are not related to a disability-based need, impose an undue financial and administrative burden, or fundamentally alter the nature of the housing services provided at the Building. In such case, the Building will engage in a cooperative dialogue, and discuss reasonable alternatives that may meet the requesting individual's needs.

**Procedure for Making a Request**

Requests may be, but are not required to be, submitted in writing, preferably through the attached form. Fully describe the required accommodation or modification on the Reasonable Accommodation Request form. Please include any additional information that you believe would be useful in assisting us to evaluate the request. A request need not be submitted in writing nor be made using the attached form to be considered by us.

**Verification and Documentation**

If your disability or disability-related need is not obvious, we may request that you provide verification that you have a disability-related need for the requested accommodation.

1

**Providing Disability-Related Accommodations**

Building personnel will discuss your request with you. If the request is approved, the Building will provide a letter explaining how and when the accommodation or modification can be provided. If a request cannot be approved because it is an undue financial and administrative burden or because it would be a fundamental alteration of the services provided at the Building, personnel will engage in a cooperative dialogue to discuss alternative accommodations or modifications that may address your disability-related need. If no alternative meets your disability-related the needs, or if you and the Building cannot agree on a reasonable alternative, the Building will notify you of the denial in writing in a reasonable amount of time and will provide an opportunity for you to revise your request.

RE\26098\0001\5424639v1

## REASONABLE ACCOMMODATION OR MODIFICATION REQUEST FORM

Name:

_____

Address:

_____

_____

Telephone:

_____

Email:

_____

Request Submitted on behalf of:

_____
Name of Individual with a Disability

Please describe the reasonable accommodation or modification requested and the disability-related reason for your request.

_____

_____

_____

_____

_____

_____

Date:

_____

Signature:

_____

Please submit this form and additional information to:

<u>For Office Use Only</u>

[  ] Approved        Reason: _____

[  ] Denied          Reason: _____

_____

**APPENDIX E**

**ACKNOWLEDGMENT OF RECEIPT OF CONSENT JUDGMENT**

I, _____, am an employee of _____ and my duties include _____.

I have received and read a copy of the Judgment and have been given instruction on (1) the terms of this Consent Judgment, (2) the requirements of the Fair Housing Act, particularly related to the Fair Housing Act's design and construction requirements, and leasing, requirements, and (3) my responsibilities and obligations under the Judgment and the Fair Housing Act. I have had all of my questions concerning the Consent Judgment answered to my satisfaction.

Date: _____ _____, 202__

_____
Employee Signature

_____
Print Name

RE\26098\0001\5424639v1

**APPENDIX F**

**CERTIFICATION OF FAIR HOUSING TRAINING**

On _____ _____, 202__ I attended training on the federal Fair Housing Act, including its requirements concerning physical accessibility for persons with disabilities. If my duties involve or will involve supervision over the development, design and/or construction of an apartment building, I was also instructed as to the design and construction requirements of the Fair Housing Act. If my duties involve or will involve supervisory authority over the rental apartments and/or the provision of services to residents, I was also instructed as to rental policies and procedures, including the non-discrimination, complaint, and reasonable accommodation and modification policies of the Fair Housing Act.

I have had all of my questions concerning the Fair Housing Act answered to my satisfaction.

Date: _____ _____, 202_

_____
Employee Signature

_____
Print Name

1

**APPENDIX G**

**ACKNOWLEDGMENT AND AGREEMENT**

I acknowledge that I have received and read the Anti-Discrimination Policy for the building known as the "Crescendo" and located at 25 Bruckner Boulevard, Bronx New York (the "**Building**"). I agree to comply with the terms of the Policy and with all federal, state, and local housing discrimination laws.

Date: _____ _____, 202_

_____
Employee Signature


_____
Print Name

1

## APPENDIX H - FAIR HOUSING POSTER

U. S. Department of Housing and Urban Development





EQUAL HOUSING
OPPORTUNITY

### We Do Business in Accordance With the Federal Fair Housing Law

(The Fair Housing Amendments Act of 1988)

---

## It is illegal to Discriminate Against Any Person Because of Race, Color, Religion, Sex, Handicap, Familial Status, or National Origin

---

■ In the sale or rental of housing or residential lots

■ In advertising the sale or rental of housing

■ In the financing of housing

■ In the provision of real estate brokerage services

■ In the appraisal of housing

■ Blockbusting is also illegal

---

Anyone who feels he or she has been discriminated against may file a complaint of housing discrimination:

    1-800-669-9777  (Toll Free)
    1-800-927-9275  (TTY)
    www.hud.gov/fairhousing

**U.S. Department of Housing and Urban Development**
Assistant Secretary for Fair Housing and Equal Opportunity
Washington, D.C. 20410

Previous editions are obsolete         form HUD-928.1 (6/2011)

1

**APPENDIX I - FAIR HOUSING LOGO**



